**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 18 Misc. _____ |

---

# APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

Dated: March 5, 2018

Javier H. Rubinstein (Bar No. JR2875)
javier.rubinstein@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Lucila I. M. Hemmingsen (Bar No. LH2921)
lucila.hemmingsen@kirkland.com
Lauren Friedman (application for admission
*pro hac vice* to be filed)
lauren.friedman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Petitioners*

1.     Antonio Del Valle Ruiz and 54 other investors whose names are listed in **Exhibit 1** hereto (collectively the "Petitioners"), respectfully submit this application and petition for an Order pursuant to 28 U.S.C. § 1782, directing Respondents Banco Santander S.A. ("Banco Santander"), a Spanish *Sociedad Anónima* (corporation) whose principal U.S. branch is within this District and regulated by the New York State Department of Financial Services, and its wholly-owned subsidiaries Santander Holdings U.S.A., Inc., and Santander Bank N.A. (collectively "Santander U.S.A.," and together with Banco Santander, "Santander"), which maintain offices and multiple branches in this District, to provide certain discovery relating to the resolution and forced sale of all the shares of Banco Popular Español S.A. ("Banco Popular") to Banco Santander for one Euro.

2.     Petitioners bring this proceeding to obtain third party discovery in aid of foreign proceedings, specifically: (i) Petitioners' pending litigation against the European Commission and the EU Single Resolution Board before the General Court of the Court of Justice of the European Union; and (ii) Petitioners' recently notified international arbitration claims against the Kingdom of Spain pursuant to the Agreement for the Reciprocal Promotion and Protection of Investments Between the United Mexican States and the Kingdom of Spain.[1]

3.     The discovery sought is directly relevant to and highly probative of the claims and issues in both the pending E.U. litigation and to the upcoming investment treaty arbitration. Both proceedings revolve around the loss of Petitioners' investment in Banco Popular as a result of Banco Popular's Resolution and Banco Santander's acquisition of Banco Popular for the nominal price of one Euro, carried out without any prior notice without any opportunity for shareholders to be heard either regarding the resolution or the acquisition or regarding the grossly unfair market

---

[1]     42 of the Petitioners are parties to both proceedings. The remaining 13 have served notice of their claims on the Government of Spain and will be parties to the international arbitration proceeding, but are not parties to the CJEU Litigation.

value that Banco Santander paid for the shares (it paid one Euro for the entire Banco Popular). Respondents possess documents and information regarding the Banco Popular transaction that will materially aid the E.U. Court and the arbitral tribunal in the disposition of their respective proceedings.

4.    In connection with this application, Petitioners submit the following supporting papers: (i) the Declaration of Javier H. Rubinstein, and the exhibits attached thereto; (ii) the Declaration of Pedro Rubio Escobar, and the exhibits attached thereto; and (iii) Petitioners' Memorandum of Law in support of this Application and Petition.

## I.    FACTUAL BACKGROUND

5.    This Petition arises from the unprecedented, government-ordered "sale" of Banco Popular, then the sixth largest bank in Spain, to Santander, for the price of one Euro, as part of a "resolution" ordered by Europe's Single Resolution Board ("SRB") and the Spanish Fondo de Resolución Ordenada Bancaria ("FROB") on June 7, 2017 (the "Resolution"). Under that Resolution, Banco Popular shareholders and owners of contingent convertible bonds were completely wiped out (the resolution mechanism applied called for the cancellation of all shares and of Tier 1 bonds), without any notice, recourse or opportunity to be heard.  Petitioners are challenging the SRB's and FROB's decision to resolve Banco Popular, the implementation of a forced sale whereby Santander acquired Banco Popular for the nominal amount of one Euro, an amount evidently far below market value, and the consequent loss of their investment.

### A.    Petitioners

6.    Antonio Del Valle Ruiz is a citizen of Mexico, and was a shareholder in Banco Popular until his shares were canceled by the SRB and FROB as part of the Resolution.  Mr. Del Valle is the lead plaintiff (in European terminology, "applicant") in *Del Valle Ruiz and Others v. European Commission and Single Resolution Board*, Case T-510/17, filed August 4, 2017, at the

General Court of the Court of Justice of the European Union (the "CJEU Litigation").  A copy of the Application (the equivalent of a Complaint) in that matter is attached to the Declaration of Javier Rubinstein as **Exhibit 1**.  The Petitioners notified the Kingdom of Spain on January 22, 2018, of their intention to commence an international investment arbitration ("Investment Treaty Arbitration") under Article IX of the *Acuerdo para la Promoción y Protección Recíproca de Inversiones entre los Estados Unidos Mexicanos y el Reino de España* (Agreement for the Reciprocal Promotion and Protection of Investments Between the United Mexican States and the Kingdom of Spain, or "Mexico-Spain Bilateral Investment Treaty"). A copy of the Notification Letter is attached to the Declaration of Javier Rubinstein as **Exhibit 2**.

7.     This Petition is also brought by 54 other investors in Banco Popular, whose details are appended hereto as **Appendix A**. Each of these investors is (i) a plaintiff in the E.U. Proceedings; and/or (ii) plans to bring claims in an international investment arbitration against the Kingdom of Spain under Article IX of the Mexico-Spain Bilateral Investment Treaty.

### B.     Respondents

8.     Banco Santander, S.A. is the largest bank in Spain, and one of the top 20 largest banking groups in the world. It is a *sociedad anónima* (corporation) organized under the laws of Spain and with its principal place of business in Boadilla del Monte, Madrid, Spain.  Banco Santander's principal branch in the United States is located at 45 East 53rd Street, New York, New York 10022, and is regulated by the New York State Department of Financial Services ("NYSDFS").  According to information from the NYSDFS, Banco Santander received its charter to operate a branch in New York on April 12, 1977. Banco Santander sponsors American Depository Shares, whose depositary is Bank of New York Mellon and which trade on the New York Stock Exchange.

9.      Santander Holdings U.S.A., Inc., is a corporation organized under the laws of Virginia and officially headquartered in Boston, Massachusetts (although its C.E.O. appears to live and work in this District), and a Registered Bank Holding Company.  It is the parent company of Santander Bank N.A. and a wholly-owned subsidiary of Banco Santander S.A.

10.      Santander Bank N.A. is a federally-chartered National Bank with its home office in Wilmington, Delaware, and its principal place of business in Boston, Massachusetts.  Santander Bank N.A. maintains numerous branches in the Southern District of New York, including, among many others, a branch at 45 East 53rd Street, New York, New York 10022, which it shares with Banco Santander S.A.'s New York branch, and a branch at 336 Broadway, New York, New York 10013, at the corner of Broadway and Worth Street, approximately two and a half blocks from the Southern District Courthouse.

11.      Santander refers to its U.S. businesses collectively as "Santander US," and according to regulatory filings appears to use its U.S. offices and subsidiaries as a hub of intra-group lending. Based on regulatory filings, Banco Santander is involved in management decisions and corporate functions such as strategy and finance for the entire group.

### C.      The Forced "Sale" of Banco Popular

12.      As explained at length in the attached Declarations, this application arises from the unlawful conduct of the Spanish Government and the European Union Single Resolution Board in forcing the "sale" of Banco Popular to Santander for one Euro (approximately $1.22 at current exchange rates).

13.      At the time of its Resolution, Banco Popular was Spain's sixth largest bank and was solvent, with total assets of approximately €147 billion. Historically strong in Spanish retail banking, it lent money to small and medium-sized enterprises, and since the mid-2000s, expanded its mortgage and home loan operations too. After Spain's housing sector collapsed, Banco Popular

had to take a number of significant provisions and had to recapitalize, including soliciting investments from Petitioners and other wealthy Latin American investors. Unlike most of its competitors, however, Banco Popular never applied for state aid in the wake of the financial crisis.

14.     Because of an adverse court decision regarding the validity of "floor clauses" in home mortgages, Banco Popular took a €350 million provision in 2015. In response to that, Banco Popular's management began implementing a plan to improve the bank's financial condition, including asset sales, capital increases, and a potential private sale of the business. In April 2017, Banco Popular's shareholders approved these efforts, and Banco Popular's management quickly completed or began negotiating numerous sales of assets for billions of Euros. It also began the process of launching a €3-4 billion capital raise, soliciting investments from numerous banks, institutional investors, and high net worth individuals. Petitioners, together with other members of a coalition they had formed, had expressed interest in committing half of the required amount themselves, and other institutional investors and banks had written to express interest in much of the remainder, including Deutsche Bank, Barclays Bank, and PIMCO. Additionally, it began an official sale process for which it created a virtual data room and solicited bids from potential acquirers, including CaixaBank, BBVA, Sabadell, Bankia—and Santander. In late May, Santander was reported to have been preparing a bid in the region of €3 billion, and had retained UBS and at least one New York-based investment banking and financial services company as its advisors.

15.     While this process was ongoing, Spanish government entities withdrew 40% of their deposits in Banco Popular, thereby materially impairing Banco Popular's liquidity position. On May 11, 2017, after the news outlet *El Confidencial* published rumors that Banco Popular would go bankrupt, a run on the bank began, with withdrawals of approximately €1 billion per day. Banco

Popular gave notice to regulators on May 18 that the run had brought it below the regulatory liquidity coverage threshold, and announced plans to restore its compliance with that requirement.

16.     The same day, however, the Spanish Minister of the Economy, Luis de Guindos, stated to the news outlet *El Economista* that Spain was not envisioning providing liquidity assistance or other support to Banco Popular and that the bank was being supervised by the European Central Bank ("ECB").

17.     Days later, on May 23, the Chair of the European Single Resolution Board stated publicly that Banco Popular was being "observed" by the SRB. This exacerbated the run on the bank, as depositors panicked, with no lender-of-last-resort providing liquidity assistance to stop the panic. The run accelerated when, on May 31, 2017, Reuters attributed to the Chair of the SRB a warning to E.U. officials that Banco Popular might need to be wound down if it did not find a buyer; in response to journalist inquiries, the SRB refused to comment.

18.     Despite Banco Popular's requests for emergency liquidity assistance to calm the panic and stabilize its liquidity position, Spain initially denied liquidity assistance altogether, and then granted only about a third of what Banco Popular had requested to overcome the ongoing run on the bank, reportedly posting €52 billion of assets as collateral but only receiving €3.5 billion in liquidity assistance, roughly the amount of deposit withdrawals that were occurring in a single day.

19.     On June 3, the European Union Single Resolution Board reportedly agreed with Spain's resolution authority, the FROB, in an executive session to begin preparing an open tender process to solicit bids for Banco Popular. That day, the FROB launched "Project Hippocrates," with the goal of facilitating the "eventual acquisition" of Banco Popular.

20.     During this time, the Spanish Minister of Economy, Luis de Guindos, was in the United States with the Executive Chair of Santander, Ana Botín, at a meeting of the Bilderberg

Group in Chantilly, Virginia. Santander's C.E.O., meanwhile, was in New York, where he rang the New York Stock Exchange closing bell to celebrate 30 years of listing—two months prior to the actual 30th anniversary. Spanish media later reported that at the same time, Santander's longstanding Spanish counsel, Uría Menéndez, had drafted an "action plan" describing what the purchaser of Banco Popular should do upon acquiring Banco Popular on "Day R". Uría Menéndez served as Santander's Spanish counsel in connection with Santander's capital raising efforts in New York immediately following the resolution.

21.     On June 4, 2017, FROB sent non-disclosure agreements to five Spanish banks, which would allow them to access a virtual data room the next day, and which reportedly was the exact same virtual data room that Banco Popular had made available to bidders during the still ongoing private sale process. Of the bidders, only one—Santander—had previously completed diligence on a potential bid.

22.     On June 5, 2017, the Spanish central bank, the Banco de España, reportedly informed Banco Popular that it would provide no further liquidity assistance. On June 6, 2017, Banco Popular's Board determined that it lacked the liquidity to open the next day, and informed regulators.

23.     On June 6, the European Central Bank issued a finding that Banco Popular was failing or likely to fail due to the liquidity crisis that Banco Popular was experiencing due to the run on bank deposits. That same day, FROB issued a "Process Letter" stating that bids for Banco Popular would be due at midnight that same day, that no further information would be provided, and that a winner would be selected at 1 a.m., just an hour after the close of bids. There would be no reserve price for this auction; €1 was the minimum bid.

24.     The same day, BBVA, one of the banks selected to participate by the FROB, wrote to complain about the process and the information being insufficient to allow it to bid, and confirmed its interest in submitting a bid, should more time and information be provided. However, BBVA was not given additional time or information to submit a bid.

25.     According to later media reports, Santander had prepared two bids—one for approximately €3 billion, and one for €1. Apparently after learning that no other bids were forthcoming, Santander submitted the €1 bid.

26.     The FROB quickly declared Santander to have won the "auction," and formally proposed to the Single Resolution Board that Banco Popular's shares and bonds be canceled, and that the entire bank be awarded to Santander for €1. The SRB swiftly adopted its own decision incorporating the FROB's proposal.

27.     At no time did investors have any opportunity to be heard. Even after the resolution was announced, the SRB and the FROB refused to provide the entire basis for their decision. Petitioners are challenging that decision, one that  the SRB's internal Appeal Panel deemed illegal in substantial part. In short, with no notice or opportunity to be heard, Petitioners' shareholdings in Banco Popular were canceled and rendered worthless.

**D.     Banco Popular Investors—Including Petitioners—Bring Proceedings to Challenge the Seizure of Their Investments**

28.     Soon after the Banco Popular Resolution and Santander's acquisition of Banco Popular was announced, investors brought proceedings before the General Court of the Court of Justice of the European Union to challenge the decision by the SRB and the EC to resolve Banco Popular, causing the loss of their shares.

29.     Mr. Del Valle and 41 other petitioners are plaintiffs ("Applicants") in *Del Valle Ruiz and Others v. European Commission and Single Resolution Board*, Case T-510/17, which is pending

before the General Court of the Court of Justice of the European Union.  That case challenges the resolution decision and procedure adopted by the E.U. Single Resolution Board as violating E.U. law, and seeks the voiding of such resolution decision. Among the issues in that case are whether the Single Resolution Board's decision: (i) followed the process established for resolutions, including whether Banco Popular was actually "failing or likely to fail" to justify its resolution, and whether there were other private sector solutions that could have been implemented within a reasonable timeframe to prevent the resolution; (ii) infringed on the fundamental right to property without justification; and (iii) whether the sale to Santander was proportionate and in line with the resolution plan pre-established for Banco Popular, and whether the price paid was within fair market values. A copy of Petitioners' complaint filed with the European Court of Justice is attached as **Exhibit 1** to the Declaration of Javier Rubinstein.

30.     Petitioners also notified the Kingdom of Spain on January 22, 2018 of their intention to initiate investor-state arbitration proceedings pursuant to the Mexico-Spain Bilateral Investment Treaty. In that proceeding, Petitioners will claim that Spain's acts and omissions prior to, during and after the resolution of Banco Popular, violated multiple guarantees and protections afforded to Petitioners in the Mexico-Spain Bilateral Investment Treaty. Specifically, among other breaches, Spain unlawfully expropriated their investments, and breached its commitment to provide fair and equitable treatment by acting in a manifestly arbitrary way and by failing to respect the investors' legitimate expectations to be treated in a reasonable way by Spain.

## II.     PETITIONERS SHOULD BE GRANTED PERMISSION TO CONDUCT DISCOVERY OF SANTANDER UNDER 28 U.S.C. § 1782.

31.     Petitioners each are "interested persons" because they are parties to pending and anticipated foreign litigation and arbitral proceedings described above in which they intend to use the evidence discovered through this proceeding.

32. Respondents are each found in this District at (among other places) 45 East 53rd Street, New York, New York 10022.

33. Banco Santander maintains its principal branch in the United States in Manhattan and is regulated as a foreign bank branch by the New York State Department of Financial Services. Moreover, based on securities filings and the websites of advisors to Santander, Petitioners are informed and believe that Santander performed work and received professional advice regarding the acquisition of Banco Popular in this District, likely including advice from Citigroup, UBS, and Davis Polk & Wardwell LLP. Then, in order to facilitate the acquisition of Banco Popular, Santander conducted "roadshow" investor and analyst meetings in New York, launched a Rights Offering in New York to holders of its sponsored American Depositary Shares, listing its branch in this District as its agent, using a depositary located in this District, receiving financial advice from UBS and a New York-based investment banking and financial services company, and receiving legal advice from Davis Polk & Wardwell LLP's New York office regarding that offering.

34. Santander Holdings U.S.A., Inc., and Santander Bank N.A. maintain offices and branches in this District, including sharing an office with Banco Santander's U.S. branch. Additionally, Santander Holdings U.S.A., Inc.'s C.E.O. appears to reside in this district in Westchester County, and therefore likely maintains his offices in this District.

35. Respondents possess documents and information regarding their acquisition of Banco Popular, the resolution of Banco Popular, and the financial condition of Banco Popular, that is highly material to both the CJEU Litigation and the recently notified Investment Treaty Arbitration. Petitioners believe that the requested discovery will provide relevant evidence regarding the facts and circumstances that led to the resolution of Banco Popular, its acquisition by Banco Santander, the financial condition of Banco Popular in the period prior to the resolution,

all of which is directly to the claims asserted in the CJEU Litigation and the Investment Treaty Arbitration.

36.     As further explained in the attached Memorandum of Law, the discovery sought is not unduly burdensome; the documents requested are readily available to Banco Santander and its wholly owned subsidiary, Banco Popular—many of which Santander has likely previously identified and used for other purposes, such as the contents of the Virtual Data Room and documents gathered to prepare securities filings and consolidated financial statements—and a corporate representative deposition. The discovery is for use in proceedings in the General Court of the Court of Justice of the European Union and before the investor-state arbitration tribunal, each of which are "foreign or international tribunal[s]."

WHEREFORE, Petitioners respectfully request that this Court enter an Order:

1.  Granting Petitioners' application for an order to conduct discovery pursuant to 28 U.S.C. § 1782;

2.  Authorizing Petitioners to take discovery related to Santander's acquisition of Banco Popular, including: (i) issuing and serving the subpoenas to Respondents for production of documents and corporate representative deposition testimony attached as **Appendix B** hereto; and (ii) issuing and serving such additional subpoenas to Respondents for the production of documents and testimony as Petitioners may reasonably deem appropriate.

3.  Directing Respondents to respond to such subpoenas pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court;

4.  Granting such other relief this Court may deem necessary and proper.

Dated: New York, New York
      March 5, 2018

Kirkland & Ellis LLP


/s/ Javier H. Rubinstein
Javier H. Rubinstein (Bar No. JR2875)
javier.rubinstein@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Lucila I. M. Hemmingsen (Bar No. LH2921)
lucila.hemmingsen@kirkland.com
Lauren Friedman (application for admission
*pro hac vice* to be filed)
lauren.friedman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Petitioners*

# APPENDIX A

## APPENDIX A

APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE
IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

### <u>LIST OF PETITIONERS</u>

1. Antonio del Valle Ruiz

2. Abraham Abadi Tawil

3. Antonio Cosío Ariño

4. Alejandra Pérez Mina

5. Alejandro Finkler Kudler

6. Alejandra Rojas Velasco

7. Alonso de Garay Gutiérrez

8. Antonio del Valle Perochena

9. Arantzazu del Valle Diharce

10. Arturo Grinberg Kreimerman

11. Carlos Ruiz Sacristán

12. David Troice Jalife

13. Divo Milan Haddad

14. Edmundo del Valle Diharce

15. Elías Abadi Cherem

16. Enrique Rojas Blasquez

17. Eugenio Santiago Clariond Reyes

18. Fernando Ramos González de Castilla

19. Francisco Javier del Valle Perochena

20. Gerardo Madrazo Gómez

21. Germán Larrea Mota Velasco

## APPENDIX A - LIST OF PETITIONERS

| | |
|---|---|
| 22. | Georgina Rojas Velasco |
| 23. | Isabel Rojas Velasco |
| 24. | Jacobo Troice Jalife |
| 25. | Jaime Abadi Cherem |
| 26. | Jaime Ruiz Sacristán |
| 27. | Jorge Esteve Recolons |
| 28. | Jorge Rojas Mota Velasco |
| 29. | José Eduardo del Valle Diharce |
| 30. | José Manuel Fierro Von Mohr |
| 31. | José María Casanueva Y Llaguno |
| 32. | Juan Pablo del Valle Perochena |
| 33. | Julio Andrés Maza Casas |
| 34. | Luis de Garay Russ |
| 35. | Luis Francisco Suinaga Aguilar |
| 36. | María Blanca del Valle Perochena |
| 37. | María de Guadalupe del Valle Perochena |
| 38. | María Eugenia Velasco Fernández |
| 39. | María Rojas Velasco |
| 40. | Pedro de Garay Montero |
| 41. | Raimundo Esteban Istilart Elizalde |
| 42. | Rogelio Barrenechea Cuenca |
| 43. | Sofía de Garay Montero |
| 44. | Xochitl de Guadalupe Montero Motta (Xochitl Montero De De Garay) |
| 45. | BBVA Bancomer Servicios, S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer, as trustee of Trust F/703850 |
| 46. | Consultores CGEK, S.C. |

**APPENDIX A - LIST OF PETITIONERS**

47.     Fondo Administrado 5, S.A de C.V., Fondo de Inversión de Renta Variable

48.     GBM Capital Bursátil, S.A. de C.V., Fondo de Inversión de Renta Variable

49.     GBM Fondo de Inversión Total, S.A. de C.V., Fondo de Inversión de Renta Variable

50.     GBM Global, S.A. de C.V., Fondo de Inversión de Renta Variable

51.     Grupo Bursátil Mexicano, S.A. de C.V., Casa de Bolsa, as trustee of Trusts F/000138; F/000139; F/101; and F/100

52.     Grow Investments S.A. de C.V.

53.     Hechos con Amor, S.A. de C.V.

54.     Inmobiliaria Asturval, S.A. de C.V.

55.     Simple Investments, S.A. de C.V.

# APPENDIX B

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782, *Petitioners,* | ) ) ) ) ) ) | Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                            Banco Santander S.A.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A

| Place: Kirkland & Ellis LLP, 601 Lexington Ave New York, NY 10022 | Date and Time: 04/19/2018 9:30 am |
|---|---|

The deposition will be recorded by this method:  court reporter and videographer

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attachment B

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*

                                                                OR

_____          _____
   *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**

    **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
    **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782, <br> Petitioners, | ) ) ) ) ) ) Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                   Santander Bank N.A.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A

| Place:  Kirkland & Ellis LLP, 601 Lexington Ave <br> New York, NY 10022 | Date and Time: <br> 04/19/2018 9:30 am |
|---|---|

The deposition will be recorded by this method:   court reporter and videographer

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attachment B

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*

                                            OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                                                      *Server's signature*

                                              _____
                                                                      *Printed name and title*

                                              _____
                                                                      *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
    **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | |
|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782,<br><br>Petitioners, | )<br>)<br>)<br>)<br>)<br>)     Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Santander Holdings U.S.A. Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A

| Place:   Kirkland & Ellis LLP, 601 Lexington Ave<br>New York, NY 10022 | Date and Time:<br>         04/19/2018 9:30 am |
|---|---|

The deposition will be recorded by this method:    court reporter and videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   See Attachment B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

            *CLERK OF COURT*

                                      OR

_____        _____

       *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 18 Misc. _____ |

**ATTACHMENT A**

The United States District Court for the Southern District of New York has authorized Petitioners to serve this subpoena on you in support of foreign proceedings. Specifically, litigation is currently pending between Petitioners and the European Commission and European Single Resolution Board in the General Court of the European Union (the "CJEU Proceedings"), and Petitioners will shortly commence investor-state arbitration proceedings against the Kingdom of Spain (the "Arbitration Proceedings"). Both the CJEU Proceedings and the Arbitration Proceedings relate to the resolution of Banco Popular Español, S.A. ("Banco Popular") and its acquisition by Banco Santander, S.A.  Petitioners are seeking discovery under 28 U.S.C. § 1782 in support of both the CJEU Proceedings and the Arbitration Proceedings.

You are hereby notified of your duty to designate and produce for deposition one or more officers, directors, managing agents, employees or other persons who consent to testify on Your behalf as to all matters known or reasonably available to You concerning the Matters for Examination set forth below.

**MATTERS FOR EXAMINATION**

1. Any actual or contemplated acquisition of Banco Popular or its assets, by You.

2. The due diligence conducted by You in connection with any potential acquisition of Banco Popular, or its assets, prior to June 7, 2017.

1

3.     Your retention of professional advisors, including, but not limited to, Citigroup and UBS and any of their affiliates, in connection with any actual or potential acquisition of Banco Popular, or its assets.

4.     Your Communications with any Regulator or Public Official relating to Santander's acquisition of Banco Popular.

5.     Your Communications with any Regulator or Public Official in connection with any actual or potential acquisition of Banco Popular, S.A., or its assets.

6.     Banco Popular's Communications with any Regulator or Public Official relating to Banco Popular's request for Emergency Liquidity Assistance, prior to June 7, 2017.

7.     Your Communications with any Regulator or Public Official relating to any actual or potential Resolution of Banco Popular.

8.     Your Communications with Banco Popular prior to June 7, 2017, regarding Your potential or actual acquisition of Banco Popular or the Resolution of Banco Popular.

9.     Banco Popular's Communications with any Regulator or Public Official relating to any Banco Popular request for Emergency Liquidity Assistance during the period November 2016 through June 7, 2017.

10.    Banco Popular's Communications with any Regulator or Public Official prior to June 7, 2017, relating to the actual or potential Resolution of Banco Popular.

11.    The solvency of Banco Popular, including, but not limited to, Banco Popular's solvency and liquidity position during the period May 1, 2017 through June 7, 2017.

12.    Banco Popular's efforts to improve its financial position during the period January 1, 2017 through June 7, 2017, including, but not limited to, sales of assets, capital increases, and efforts to sell the company.

13. Expressions of interest received by Banco Popular during the period January 1, 2017 through June 7, 2017, regarding participation in a Banco Popular capital increase, including, but not limited to, expressions of interest from Deutsche Bank, Barclays, and PIMCO.

14. Any state aid or tax incentives provided to You or promised to You by the Spanish Government in connection with or as a result of the actual or potential acquisition of BPE by Santander or Santander's ownership of BPE, including, but not limited to, any state aid or tax incentives relating to losses incurred by BPE prior to the Acquisition.

15. Your knowledge of Communications between the Spanish Government, on the one part, and the Single Resolution Board, European Commission, or European Central Bank, on the other, relating to BPE, including but not limited to any actual or potential Resolution of BPE, alternative options for BPE other than Resolution, and whether normal insolvency proceedings would have increased or reduced losses to creditors or investors.

16. Your relationship with Luis de Guindos, including, but not limited to, any conversations or other Communications between Mr. Guindos and Ana Botín or any other Santander officer or director prior to June 7, 2017, regarding Your acquisition of Banco Popular or the Resolution of Banco Popular.

17. Your efforts to raise capital in connection with the acquisition of Banco Popular.

18. The value of Banco Popular as of June 6, 2017, including, but not limited to, any valuation performed of Banco Popular or its assets.

19. Revenues and profits You have realized as a result of Your acquisition of Banco Popular.

**INSTRUCTIONS**

1. Unless the Request explicitly states otherwise, the date range for each Request shall be the

period beginning January 1, 2016, and continuing through the present.

## DEFINITIONS

1.      The "**Relevant Period**" is, unless otherwise stated, from November 1, 2016 through the present.

2.       "**BPE**" or "**Banco Popular**" shall mean Banco Popular Español, S.A., and its respective principals, affiliates, agents, employees, officers, directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

3.      "**You**" or "**Santander**" shall mean Banco Santander, S.A., Santander Holdings U.S.A., Inc., and Santander Bank, N.A., their respective principals, affiliates, agents, employees, officers, directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

4.      "**Regulator**" shall mean any Public Official or department, agency, or instrumentality, or any person acting on their behalf or at their behest.

5.      "**Public Official**" shall mean any person elected, appointed, employed, contracted, or otherwise holding any position or office in or under any international, transnational, continental, national, subnational, regional, autonomous community, state, provincial, municipal, local, or other government, group of governments, or international organization.

6.      "**Government of Spain**" shall mean the Kingdom of Spain, its government, any organ, agency, department, official, agent, Minister, contractor, advisor, attorney, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control, and includes but is not limited to FROB, the BdE, the CNMV, CNMC and/or

the Ministry of Economy.

7.    "**Document**" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, contracts, diaries, memoranda, prospectuses, tapes, electronic data or storage, stenographic or handwritten notes, studies, spreadsheets, databases, proofs, manuscripts, transcripts, publications, books, scripts, data, source code, object code, files, pamphlets, pictures, films, screenplays, videorecordings, audiorecordings, reports, financial statements, ledgers, applications, emails, instant messages, text messages, web pages, paintings, photographs, photographic negatives, facsimiles, telexes, lettergrams, telegrams, or cables, however produced or reproduced. "**Document**" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original. "**Document**" includes electronically-stored information.

8.    "**Communication**" means any conveyance of information by any means, including but not limited to in writing, via email, via instant messaging software, or via telephone.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 18 Misc. _____ |

**ATTACHMENT B**

The United States District Court for the Southern District of New York has authorized Petitioners to serve this subpoena on you in support of foreign proceedings. Specifically, litigation is currently pending between Petitioners and the European Commission and European Single Resolution Board in the General Court of the European Union (the "CJEU Litigation"); Petitioners also will soon commence investment treaty arbitration proceedings against the Kingdom of Spain (the "Investment Treaty Arbitration"). Both the CJEU Litigation and the Investment Treaty Arbitration relate to the resolution of Banco Popular Español, S.A. and its acquisition by Banco Santander, S.A. Petitioners seek the following documents relevant to one or both of those proceedings. Instructions and term Definitions are set out following the Requests.

**DOCUMENT REQUESTS**

1.      Please produce all Documents created in the period between January 1, 2016 and June 7, 2017, relating to any actual or contemplated acquisition of BPE by Santander, including, but not limited to, valuations of BPE and/or the assets of BPE, risk assessments of BPE's credit and real estate portfolio, plans to sell BPE's credit and real estate portfolio, assessments of BPE's liquidity, assessments of BPE's capital requirements, plans to raise capital in connection with any acquisition of BPE, post-acquisition business plans, plans

1

of post-acquisition synergies, acquisition costs, and due diligence reports.

2.     Please produce all retention agreements with any professional advisor (other than your legal counsel) or vendor in connection with any actual or contemplated acquisition of BPE by Santander, including, but not limited to, any retention agreement with Citigroup and UBS or any affiliate thereof.

3.     Please produce all Documents related to due diligence for any contemplated acquisition of BPE by Santander or any other party, including questions posed by or requests for information or documents from potential acquirers of BPE (including, but not limited to, Santander) and the responses to any such questions, and the contents of the BPE virtual data room. Please also produce the contents of the Single Resolution Board SharePoint, as described in Deloitte's "Hippocrates Provisional Valuation Report" of June 6, 2017, p. 3, if you had access to the SharePoint..

4.     Please produce all Communications between Santander and any Regulator in the United States or Spain related to the acquisition of BPE by Santander, including, but not limited to, Communications relating to regulatory approval of the acquisition of BPE or sale of TotalBank, N.A., a subsidiary of BPE.

5.     Please produce all Communications between Santander or BPE and the Government of Spain, relating to the actual or potential acquisition of BPE by Santander or any other purchaser.

6.     Please produce all Communications between Santander or BPE and Deloitte relating to the actual or potential resolution of BPE, the actual or potential acquisition of BPE by Santander or any other purchaser, or the valuation of BPE in connection with "Project Hippocrates."

7.      Please produce all Communications between Santander or BPE and the Government of Spain relating to any request for Emergency Liquidity Assistance by BPE, including any Communications regarding the collateral required or posted by BPE in connection with any such request.

8.      Please produce all Communications between Santander or BPE and the Government of Spain relating to the Resolution of BPE.

9.      Please produce all Communications between Santander or BPE and the Government of Spain in the period between January 1, 2016 and June 7, 2017, relating to any actual or potential private transaction by BPE designed to improve the financial condition of BPE.

10.     Please produce all Documents relating to any state aid or tax incentives provided or to be provided in connection with or as a result of the actual or potential acquisition of BPE by Santander or Santander's ownership of BPE, including, but not limited to, any state aid or tax incentives relating to losses incurred by BPE prior to the Acquisition.

11.     Please produce all Communications in Your possession, custody, or control between the Spanish Government, on the one part, and the Single Resolution Board, European Commission, or European Central Bank, on the other, relating to BPE, including, but not limited to, any actual or potential Resolution of BPE, alternative options for BPE other than Resolution, and whether normal insolvency proceedings would have increased or reduced losses to creditors or investors.

12.     Please produce all Documents not covered by Request Nos. 4 through 8 above and relating to any meeting, conversation, telephone call, discussion, or other written or oral communication between Santander and the Government of Spain, relating to BPE, for the period prior to June 7, 2017, including, but not limited to, the actual or potential Resolution

3

of BPE and any actual or potential acquisition of BPE by Santander.

13. Please produce all Documents, for the period on or before June 7, 2017 and/or the dates noted in each request below, relating to or reflecting internal or external reviews of:

   a. BPE's credit portfolio for the 2016 and 2017 fiscal years;

   b. BPE's asset provisioning, including any recommended changes to be made to BPE's asset provisioning for the 2016 and 2017 fiscal year;

   c. The evolution of deposits in BPE, including the extent of deposit withdrawals, for the period between 2015 and 2017;

   d. BPE's credit portfolio, including any reviews conducted by the European Central Bank or the Bank of Spain in the period between January 1, 2016 and June 7, 2017; and

   e. BPE's capital requirements, conducted during the period January 1, 2016 to June 7, 2017, including all report documents related to such reviews;

14. Please produce all internal or external presentations provided to or made by the Management Committee or Board of Directors of BPE, together with any documents referenced therein, relating to the financial condition of BPE or plans to improve the financial condition of BPE, including but not limited to (i) the action plan to recover the Liquidity Coverage Ratio referred to in a presentation given to the Board of Directors on June 6, 2017; (ii) the documents underlying the projection in that presentation of BPE's deposits between June 6 and June 16, 2017; (iii) the business plan approved on May 31, 2017, referenced in that same presentation; (iv) the documents underlying the charts in that same presentation of deposit inflows and outflows between December 31, 2016, and June 6, 2017.

15. Please produce all BPE Board Minutes and all materials provided to the Board of Directors

of BPE relating to the financial condition of BPE or plans to improve the financial condition of BPE.

16. Please produce all valuations of BPE's business, including BPE's assets, created by or for BPE between November 1, 2016, and June 7, 2017.

17. Please produce all offers or Communications received by BPE from any third party between April 15, 2017, and June 7, 2017, relating to any actual or potential interest in participating in a BPE capital increase or recapitalization, including, but not limited to: (i) the Barclays letter dated June 3, 2017 (a partial copy of which is attached); (ii) the Deutsche Bank letter dated June 5, 2017 (a partial copy of which is attached); (iii) all email exchanges between Miguel Escrig (Finance Manager in BPE) and Eduardo Timpanaro (Morgan Stanley) on or around April 25-16, 2017; and (iv) any letters received from PIMCO relating to interest in a capital increase, along with any Documents related to such Communications.

18. Please produce all Documents dated between November 1, 2016, and June 7, 2017, relating to any potential sale or acquisition of BPE by any third party, including any proposal or expression of interest in the acquisition of BPE by any third party.

19. Please produce all Documents dated between April 1, 2017, and June 7, 2017, regarding any asset sale by BPE, including any proposal or expression of interest by a third party in any asset sale by BPE.

20. Please produce all documents and communications prepared, sent by or received by Banco Popular and/or Banco Santander to or from the FROB and/or Jefferies International Limited ("Jefferies") and/or Arcano Asesores Financieros ("Arcano"), or their respective affiliates, between April 1, 2017 and June 7, 2017, in relation to the sale of BPE, including, but not limited to:

a.  Minutes of or Documents prepared in connection with the meeting of the FROB on June 3, 2017 that were shared with BPE and/or Santander;

b.  Communications received from the FROB, Jeffries and/or Arcano regarding "Project Hippocrates";

c.  All Documents and information obtained from the 'Virtual Data Room' prepared by the FROB, Jefferies and/or Arcano for potential bidders to review the available information of BPE prior to the submission of their bids;

d.  All Documents, information, letters and/or communications shared with other entities who were invited to participate in Project Hippocrates (including Sabadell, CaixaBank, Bankia and BBVA) that were also shared with or communicated to Santander and/or Banco Popular;

e.  All Documents reflecting any comments submitted by Santander to the Sale and Purchase Agreement on or around June 6, 2017;

f.  All Documents prepared by Santander in relation to the auction process and acquisition of BPE, including, but not limited to, all offer letters prepared to be presented in the auction, including the one actually presented offering a price of 1 Euro, and any other offer that was prepared but not presented, having a price higher than 1 Euro;

g.  Communications from the FROB, Jefferies and/or Arcana to Santander regarding the finalization of the auction process and selection of the winning bid for BPE on or around June 6 or 7, 2017.

21.  Please produce all Documents regarding or reflecting BPE's liquidity position between January 1, 2017 and June 7, 2017, including, but not limited to: Presentations, reports, and/or any documents created by BPE's Liquidity Committee; the Report entitled

"Medidas extraordinarias de Refuerzo de Liquidez" dated on or about June 7, 2017; the Report entitled "Liquidez: Situación y Actuaciones" presented by Banco Popular's Chairman, Emilio Saracho, to the Board of Directors in a meeting on or around April 2, 2017; and any documents related to the "Project Umbrella," launched on or around April 28, 2017, with the goal of creating a list of all available assets that could be presented to the BdE as collateral for a potential request for ELA.

### INSTRUCTIONS

1.  Each Request extends to all Documents in your possession, custody, or control or in the possession, custody, or control of anyone acting on your behalf. A Document is in your possession, custody, or control if it is in your physical custody or if it is in the physical custody of any person and you (i) own such Document in whole or in part; (ii) have a right (by contract, statute, or otherwise) to use, inspect, examine, or copy such Document on any terms; (iii) have an understanding, express or implied, that you may use, inspect, examine, or copy such Document on any terms; or (iv) have, as a practical matter, been able to use, inspect, examine or copy such Document when you sought to do so.

2.  If you know the location of any requested Document and do not produce the Document on the ground that the Document is not in your possession, custody, or control, you shall identify the Document and identify the person who you believe has possession, custody, or control of the Document.

3.  If you are unaware of the existence of any Documents responsive to a particular Request, your response should expressly indicate so.

4.  The original of each Document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original

or that otherwise differ from the original.

5.     All Documents shall be produced in their entirety without redaction (other than redactions for privilege) and should include all attachments and enclosures. Documents that are attached to each other or are in the same family should not be separated.

6.     You must state whether you will produce Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.     The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated. If objection is made to part of a Request, the part shall be specified; Documents responsive to the remainder of the Request shall be produced. Any such objection shall not extend the time within which you must otherwise respond to a Request to which no specific objection has been made.

8.     With respect to any Documents or information withheld on a claim of attorney-client privilege, the work product doctrine, or any other applicable privilege, you shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including (but not limited to) the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including (but not limited to) business or legal title(s) or position(s); (iv) the subject matter of the Document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.     The use of the singular form of a noun includes the plural form, and vice versa.

10.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be

construed to be outside of its scope.

11.     The terms "each," "any," and "all" shall be construed to mean "each and every."

12.     Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other Request.

13.     In responding to any of these Requests, if you encounter any ambiguity in construing either the Requests or a definition or instruction, set forth the mattered deemed ambiguous and the construction used in answering the Request. These requests are to be liberally construed, and you should resolve any doubts about whether a Document is responsive to these Requests in favor of production.

14.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure and any Case Management or Scheduling Orders entered by the Court. Supplemental responses and Document production are required if You, directly or indirectly, obtain further information after its initial responses and Document production.

15.     Unless the Request explicitly states otherwise, the date range for each Request shall be the period beginning January 1, 2016, and continuing through the present.

### DEFINITIONS

16.      "**BPE**" shall mean Banco Popular Español, S.A., and its respective principals, affiliates, agents, employees, officers, directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

17.     "**Santander**" shall mean Banco Santander, S.A., Santander Holdings U.S.A., Inc., and Santander Bank, N.A., their respective principals, affiliates, agents, employees, officers,

directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

18. **"Government of Spain"** shall mean the Kingdom of Spain, its government, any organ, agency, department, official, agent, Minister, contractor, advisor, attorney, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control, and includes but is not limited to FROB, the BdE, the CNMV, CNMC and/or the Ministry of Economy.

19.  **"Document"** shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, data, pamphlets, pictures, films, videorecordings, reports, financial statements, ledgers, applications, emails, instant messages, or text messages, however produced or reproduced, in your possession, custody, or control. **"Document"** also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original. **"Document"** includes electronically-stored information.

20. **"Communication"** means any conveyance of information by any means, including but not limited to in writing, via email, via instant messaging software, or via telephone. Where a Communication is via telephone, you should produce Documents such as telephone records sufficient to show the occurrence of the Communication.