**EXHIBIT 50**



# DECISION OF THE EXECUTIVE SESSION OF THE BOARD

## of 3 June 2017

## concerning the marketing of Banco Popular Español (hereinafter the "Bank")
## Addressed to the Fund for Orderly Bank Restructuring (hereinafter "FROB")

### (SRB/EES/2017/06)

**THE SINGLE RESOLUTION BOARD IN ITS EXECUTIVE SESSION,**

Having regard to:
- Regulation (EU) No 806/2014 of the European Parliament and of the Council of 15 July 2014 establishing uniform rules and a uniform procedure for the resolution of credit institutions and certain investment firms in the framework of a Single Resolution Mechanism and a Single Resolution Fund and amending Regulation (EU) No 1093/2010[1] (hereinafter "SRMR") and in particular Article 24 thereof,
- Directive 2014/59/EU of the European Parliament and of the Council of 15 May 2014 establishing a framework for the recovery and resolution of credit institutions and investment firms and amending Council Directive 82/891/EEC, and Directives 2001/24/EC, 2002/47/EC, 2004/25/EC, 2005/56/EC, 2007/36/EC, 2011/35/EU, 2012/30/EU and 2013/36/EU, and Regulations (EU) No 1093/2010 and (EU) No 648/2012, of the European Parliament and of the Council[2] (hereinafter "BRRD") and in particular Article 39 thereof, as transposed in Article 26 of the Spanish Law 11/2015, of 18 June,

Whereas:

(1) The liquidity situation of the Bank is rapidly deteriorating due to the significant withdrawal of deposits during the last days. The extremely critical situation of the Bank has also been translated into a significant decrease in the share value of the Bank;

(2) The failure of the Bank would have a significant adverse effect on financial stability and could result in the loss of market confidence;

(3) Under these circumstances, it is necessary that the SRB takes all the necessary measures in order to be in a position to adopt a potential resolution scheme, if needed;

---

[1] OJ L 225, 30.7.2014, p.1.
[2] OJ L 173, 12.6.2014, p. 190.

Single Resolution Board, Rue Treurenberg 22, B-1000 Brussels, Belgium
Tel: +32 229 58258, http://srb.europa.eu/ Twitter: @EU_SRB



(4) Any public disclosure of the marketing of the Bank shall be delayed in order to avoid adverse effects on financial stability; and

(5) The effectiveness of the sale of business tool in addressing the resolution objectives, including avoiding adverse effects on financial stability, has to be ensured.

**HEREBY DECIDES**:

## Article 1
## Initiation of the marketing procedure

The SRB approves the immediate launching of the marketing of the Bank by FROB, which may be assisted by an external advisor(s), in compliance with the requirements set in this Decision.

## Article 2
## Marketing Requirements

The FROB shall comply with the following requirements when marketing the Bank:

a) **The procedure has to be as transparent as possible, taking into account the above circumstances of the case and the need to safeguard the financial stability, and shall not unduly favour or discriminate against any potential acquirers.**

   i. With regard to the selection of the particular purchasers to be solicited, the FROB shall contact in all cases a sufficient number of purchasers, following a research of the market interest to invest in the activities of the Bank. Having due regard to the need to finalize the relevant marketing procedure within an extremely short timeframe, the analysis of the market interest can be informed by the interest shown during the private sales process. During the private sales process, various potential bidders operating on the Spanish and international markets have been contacted. Only five parties have expressed their initial interest and therefore, have been invited to present non-binding offers in the context of the private sales process.

   FROB will contact the five parties which have been invited to present non-binding offers in the context of the private sales process.

   Contacting these five parties is justified on the basis of financial stability grounds and the substantial risk that marketing to a wider circle of potential purchasers and the disclosure of risks and valuations or the identification of critical and non-critical functions in respect of the Bank may result in additional uncertainty and in a loss of market confidence. Moreover, contacting a wider number of purchasers might increase the probability of leakage and thus, the risk that the Bank may enter resolution within an extremely short timeframe.

Single Resolution Board, Rue Treurenberg 22, B-1000 Brussels, Belgium
Tel: +32 229 58258, http://srb.europa.eu/ Twitter: @EU_SRB


**Single Resolution Board**

Further, due to the urgency and the very limited time that is expected to be available for the marketing procedure, inviting a larger number of participants would increase the complexity of the process. Moreover, based on the information received from the Bank, it is doubtful whether bidders that have not shown interest so far in the private sales process would submit offers.

Pursuant to Article 24(3) SRMR, the SRB will strive to balance the marketing requirements with the need to achieve the resolution objectives. In particular, the SRB will partially deviate from the marketing requirements, due to the urgency of the circumstances and, in particular due to the material threat to financial stability which would arise from the failure of the Bank and the fact that complying with the need to contact a broader range of purchasers would undermine the effectiveness of the sale of business tool.

ii. With regard to the conducting of the marketing procedure, the procedure has to be transparent to allow the participating potential purchasers to be equally and duly informed at each stage of the marketing procedure. Therefore, any information required by and provided to one of the potential purchasers shall be provided at the same time to all the interested participants.

b) **The marketing procedure shall aim to maximize the sale price, while taking into account the need to effect a rapid resolution action.**

i. The potential purchasers shall submit legally binding, irrevocable offers, and shall be valid for fourteen days following their receipt by FROB.

ii. The main criterion for the evaluation of the offers meeting the conditions under paragraph i., is the offered sales price. This is without the prejudice to the rights described in Article 3(3).

c) **The necessary measures have to be taken to avoid conflicts of interest.**

Given the limited number of service providers, advisers and potential purchasers in the market, a certain risk of conflicts of interests may be inherent to any sales process. ,[3] SRB and FROB therefore have to put in place arrangements to ascertain that parties (decision-making bodies, staff and external advisors) involved in the marketing process are free from conflicts of interest. All the persons involved in the marketing process will be requested to sign a declaration of absence of conflict of interests, in which they will be requested to declare whether they have any material interest in common or conflict with any of the potential purchasers who have expressed an interest in participating in the marketing procedure. Access to information regarding the sale process will be restricted to the decision-making bodies of SRB and FROB and to the minimum necessary number of staff of the involved parties (i.e. SRB, FROB, external economic

---

[3] EBA Guidelines on factual circumstances amounting to a material threat to financial stability and on the elements related to the effectiveness of the sale of business tool under Article 39(4) of 2014/59/EU, EBA/GL/2015/04.



and legal advisors of the SRB and FROB). Moreover, in case of client relationships with any potential purchasers, external advisors of the institutions have to immediately disclose the above to the SRB and FROB and take appropriate ring-fencing measures to prevent any potential conflicts of interests.

d) **The process shall not confer any unfair advantage on a potential purchaser.**

## Article 3
### Specific conditions

3.1 During the marketing procedure, FROB and SRB shall provide each other with all the relevant information at their disposal or that of their external advisors. The SRB and FROB shall closely cooperate in all the steps of the marketing procedure, including but not limited to the following:
- Evaluation of the submitted offers;
- Negotiations, where applicable;
- Selection of the preferred bidder.

3.2 FROB shall submit the following documents to the SRB for prior approval:
- Non-disclosure agreement;
- Sales process letter;
- Bidding form; and
- Consent letter to be submitted by the selected bidder.

3.3 The FROB, following the prior approval of the SRB in its Extended Executive Session, may decide:
1. not to accept certain offers if the conditions attached to the offer or other circumstances put into question the effective application of the resolution action, including the case that there are doubts as to the ability of the purchaser to obtain the necessary approvals required by the legal framework;
2. to enter into negotiations with the bidders on all the elements of the offer and the structure of the transfer;
3. to take into account that certain potential purchasers may be more likely to address the liquidity problems of the bank and therefore to ensure the financial stability, in particular due to factors such as their financial or market position, their structure and business model.

3.4 The SRB in its Resolution Scheme will name the selected bidder as transferee and FROB will take all the necessary measures to effect the sale of business tool and execute the transfer to the selected bidder in light of the bidder's legally binding offer and the SRB's Resolution Scheme.

## Article 4
### Relationship with a potential resolution scheme

Single Resolution Board, Rue Treurenberg 22, B-1000 Brussels, Belgium
Tel: +32 229 58258, http://srb.europa.eu/ Twitter: @EU_SRB



This decision is without prejudice to any potential resolution scheme to be adopted by the SRB in its Executive Session, taking into account the circumstances of the case at that point in time.

### Article 5
### Confidentiality

This Decision is classified as SRB-RED and, therefore, shall be treated in accordance with the highest confidentiality standards.

### Article 6
### Entry into force

This decision enters into force on the date of its adoption.

*Done at Brussels, on 3 June 2017.*

*For the Executive Session of the Board*



*The Chair*
*Elke König*

Single Resolution Board, Rue Treurenberg 22, B-1000 Brussels, Belgium
Tel: +32 229 58258, http://srb.europa.eu/ Twitter: @EU_SRB