**EXHIBIT 4**



**7 June 2017 Resolution of the FROB Governing Committee adopting the measures required to implement the Decision of the Single Resolution Board in its Extended Executive Session of 7 June 2017 concerning the adoption of the resolution scheme in respect of Banco Popular Español, S.A., addressed to FROB, in accordance with Article 29 of Regulation (EU) No. 806/2014 of the European Parliament and of the Council of 15 July 2014 establishing uniform rules and a uniform procedure for the resolution of credit institutions and certain investment firms in the framework of a Single Resolution Mechanism and a Single Resolution Fund and amending Regulation (EU) No 1093/2010.**

**BACKGROUND FACTS**

**ONE.** Banco Popular Español, S.A. (hereinafter, "Banco Popular") is a Spanish credit institution, with registered offices at calle Velázquez, 34. Its Spanish tax identification number (NIF) is A-28000727 and it is recorded as entry 1 in volume 174, folio 44, sheet H-5458 of the Madrid Companies Register and with code 75 in the Bank of Spain's Institutions Register.

Banco Popular is subject to the consolidated supervision of the European Central Bank and to Regulation (EU) No 806/2014 of the European Parliament and of the Council of 15 July 2014 establishing uniform rules and a uniform procedure for the resolution of credit institutions and certain investment firms in the framework of a Single Resolution Mechanism and a Single Resolution Fund and amending Regulation (EU) No 1093/2010, pursuant to Article 2.b) of said regulation.

**TWO.** On 6 June 2017, the European Central Bank informed the Single Resolution Board (hereinafter, "the SRB") that the entity was failing or likely to fail under the circumstances described in Article 18.4.c) of Regulation (EU) No 806/2014, determining that the entity is, or there are objective elements to support a determination that the entity will, in the near future, be unable to pay its debts or other liabilities as they fall due.

**THREE.** On exercising its powers, the SRB has determined in its Decision SRB/EES/2017/08 that the conditions stipulated in Article 18.1 of Regulation (EU) No 806/2014, of 15 July, are met and therefore, it has agreed to place the entity under resolution and has approved the resolution scheme containing the resolution measures to be applied.

The SRB has established that Banco Popular fulfils the conditions laid down in the regulation for it to decide on resolution action with regard to the entity, having concluded that the entity is in serious difficulty and there is no reasonable prospect that any alternative private sector measures would prevent its failure within a reasonable time frame, and that said action is necessary in the public interest.

Pursuant to Article 18.6 of Regulation (EU) No 806/2014, of 15 July, the resolution scheme places Banco Popular under resolution, determining the application of pertinent resolution tools to the entity, instructing the FROB – as Executive Resolution Authority as per Article 2.1.d) of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms (hereinafter,

1



"Law 11/2015") – to take the measures required to apply the scheme, exercising the resolution powers conferred on it by law.

Thus, the resolution scheme provides details of the resolution tools that must be applied to Banco Popular, which consist of the sale of the entity's business in accordance with Articles 22 and 24 of Regulation (EU) No 806/2014, of 15 July 2014, subsequent to the write-down and conversion of the capital instruments determined by the loss absorption needed to meet the resolution objectives.

**FOUR.** In accordance with Article 20 of Regulation (EU) No 806/2014, of 15 July 2014, prior to deciding on the resolution scheme to be applied, the SRB obtained a valuation from an independent expert for the purposes set forth in said article.

This valuation estimates an economic value of the entity of a negative two billion euros (€2,000,000,000) in the baseline scenario and a negative eight billion, 200 million euros (€8,200,000,000) in the most adverse scenario.

The valuation, which is provisional as per Article 20.10 of Regulation (EU) No 806/2014, of 15 July 2014, has informed the SRB's decision on adopting the sale of business tool included in the resolution scheme, and the decision to write down and/or convert the shares and other capital instruments of Banco Popular.

**FIVE.** In compliance with Articles 18.9 and 29 of Regulation (EU) No 806/2014, of 15 July 2014, the FROB must implement the necessary resolution actions, by exercising the powers attributed to it as Executive Resolution Authority as per Article 2.1.d) of Law 11/2015, to ensure that the resolution scheme is duly implemented, thereby fulfilling the principles and objectives of the resolution procedure.

**SIX.** On 6 June of this year, the entity notified the European Central Bank in accordance with Article 21. 4 of Law 11/2015 that it was failing.

**SEVEN.** Banco Popular's current share capital totals €2,098,429,046.00, represented by 4,196,858,092 registered shares, all fully subscribed and paid, with a par value of fifty euro cents (€0.50) each, and of the same class and series.



## PRINCIPLES OF LAW

### ONE. ON THE POWERS OF THE SINGLE RESOLUTION BOARD AND THE FROB

Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms, regulates the early intervention and resolution of credit institutions and investment firms established in Spain, with a view to maintaining the stability of the financial system by minimising the use of public funds. According to Section 1 of the Fourth Additional Provision of this law, the application thereof is compatible with the provisions of Regulation (EU) No 806/2014, of 15 July 2014, especially concerning the functions of European authorities within the framework of the Single Resolution Mechanism, and the national authorities' duty to collaborate with the European authorities to ensure any decisions taken by European authorities within their powers are duly implemented in Spain.

Pursuant to the division of powers foreseen in Regulation (EU) No 806/2014, of 15 July 2014, between the SRB and the national resolution authorities, Article 7.2 establishes that the SRB shall be responsible for adopting all decisions relating to resolution for the entities referred to in Article 2 of the regulation that are not part of a group and for groups which are considered to be significant in accordance with Article 6.4 of Regulation (EU) No 1024/2013; or in relation to which the ECB has decided in accordance with Article 6.5.b) of Regulation (EU) No 1024/2013 to exercise directly all of the relevant powers; and for other cross-border groups. Meanwhile and within the scope of action of the SRB, the national resolution authorities are responsible for applying the resolution actions imposed by the SRB by fulfilling the instructions received in this regard. On this point, as Banco Popular is a credit institution established in a Member State participating in the Single Resolution Mechanism, and therefore fulfils the condition stipulated in Article 2.a) of Regulation (EU) No 806/2014, of 15 July 2014, and is considered to be a significant entity pursuant to Article 6.4 of Regulation (EU) No 1024/2013, the SRB is the authority responsible, in application of Article 7.2.a) of the Resolution Mechanism, for adopting all decisions concerning the resolution of the entity, including the power to place the entity under resolution and adopt the appropriate resolution scheme outlining the resolution actions to be applied to the entity.

In compliance with Articles 18.9 and 29 of Regulation (EU) No 806/2014, of 15 July 2014, the FROB must implement the resolution scheme approved by the SRB as per the instructions issued by the latter. The FROB will exercise the powers conferred on it by Law 11/2015, of 18 June, as per Article 62 thereof, in order to apply the tools and actions defined by the SRB.

Given the aforesaid, the FROB hereby implements by virtue of this Resolution the resolution actions approved by the SRB in the resolution scheme referred to in Background Fact Three of this Resolution.



**TWO. RESOLUTION ACTIONS AND TOOLS INCLUDED IN RESOLUTION SCHEME SRB/EES/2017/08**

The resolution scheme adopted by the SRB establishes that the resolution tool to be applied to the entity is the sale of the entity's business as per Article 24 of Regulation (EU) No 806/2014, of 15 July 2014, by transferring shares to a purchaser. Before applying said resolution tool, the SRB has established that, on applying Article 21 of Regulation (EU) No 806/2014, of 15 July 2014, relevant capital instruments must be written down and converted as per the terms set forth in said article.

To this end, the SRB has issued the necessary instructions to the FROB to implement the resolution tools and actions in accordance with Law 11/2015, of 18 June, further developed by Royal Decree 1012/2015, of 6 November (hereinafter, "Royal Decree 1012/2015"). Said legislation transposes into Spanish law Directive 2014/59/EU of the European Parliament and of the Council of 15 May 2014 establishing a framework for the recovery and resolution of credit institutions and investment firms and amending Council Directive 82/891/EEC, and Directives 2001/24/EC, 2002/47/EC, 2004/25/EC, 2005/56/EC, 2007/36/EC, 2011/35/EU, 2012/30/EU and 2013/36/EU, and Regulations (EU) No 1093/2010 and (EU) No 648/2012, of the European Parliament and of the Council.

The resolution scheme adopted by the SRB specifies the reasons for adopting the sale of business as the resolution tool and justifies the write-down and conversion of capital instruments prior to the transfer of the shares.

The resolution scheme adopted by the SRB aims to fulfil the principles and objectives underlying all resolution procedures. To begin with, the new regulatory framework is founded on the idea that the shareholders and creditors of an entity under resolution must be the first to bear losses in accordance with the order of priority of claims laid down in insolvency law, with the legally established exemptions. This is established in Article 15 of Regulation (EU) No 806/2014, of 15 July, Article 4 of Law 11/2015, and in Article 34 of Directive 2014/59/EU, which is applicable to the SRB to the extent that this Directive refers to the aforesaid Regulation. The aim, therefore, is to minimise the effects of an entity's resolution on taxpayers, and ensure shareholders and creditors bear an appropriate share of the costs of the resolution.

Second, as the aforesaid articles also establish, an entity's resolution must always respect the principle that no shareholder or creditor shall incur greater losses than they would have incurred had the entity been wound up under normal insolvency proceedings.

The aforementioned legislation thus establishes a clear hierarchy of claims in the context of a resolution, establishing that holders of ordinary shares and holders of Additional Tier 1 and Tier 2 capital instruments must bear the corresponding losses before any other resolution action is adopted.

In accordance with the principles set out, pursuant to the resolution scheme adopted by the SRB, and in application of Articles 38 and 39 of Law 11/2015, of 18 June, and Articles 37.2, 59 and 60 of Directive 2014/59/EU, the FROB must write down or convert the capital instruments in combination, in this instance, with the sale of business resolution tool.



Consequently, holders of Banco Popular shares, holders of Additional Tier 1 capital instruments and holders of Tier 2 capital instruments must bear the losses incurred by the entity and revealed by the entity's negative economic value as well as by the price offered in the implementation of the sale of business tool, through a non-discriminatory, transparent and open tender process.

The economic value and the offer received in the sale of business tender, which is the resolution tool which ensures the orderly resolution of the entity, evidence the existence of losses that must be borne, firstly by shareholders losing their stakes in the entity up to the extent of their capacity, with their contributions being set aside as non-distributable voluntary reserves which will be applied in the future to absorb the negative results estimated, and recognised in the valuation. The offer received during the sale process, which is the most appropriate tool to ensure due orderly resolution of the entity, also included the requirement to write down and convert the various capital instruments.

Vis-à-vis the second principle, it should be noted that based on the information of the economic valuation of the entity, the shareholders and creditors whose capital instruments will be written down and/or converted will not incur greater losses than they would have  incurred under normal insolvency proceedings. In this respect, according to Article 20.16 of Regulation (EU) No 806/2014, of 15 July, the SRB must confirm the treatment referred to in the previous paragraph by obtaining a valuation from an independent expert to assess whether shareholders and creditors would have received better treatment if the entity had entered into normal insolvency proceedings. This valuation, to be carried out after the resolution measures in this decision are implemented, must determine whether shareholders and creditors should be compensated for any difference between the losses borne and those that would have been incurred in a winding up under normal insolvency proceedings, and would be entitled to payment of the difference.

### THREE. EXECUTION OF THE POWERS TO WRITE DOWN AND CONVERT CAPITAL INSTRUMENTS

### 1.  Identification of the capital instruments affected by the exercise of write-down and conversion powers

Banco Popular's share capital is currently valued at two billion, ninety-eight million, four hundred and twenty-nine thousand and forty-six euros (€2,098,429,046), represented by four billion, one hundred and ninety-six million, eight hundred and fifty-eight thousand and ninety-two (4,196,858,092) shares with a par value of fifty euro cents (€0.50) each, represented by book entries and fully paid. All the shares representing Banco Popular's share capital are of the same class and series, and confer full and identical profit-sharing and voting rights. There are no preference shares.

These shares are to be written down first, as per Article 39.1.a) of Law 11/2015, of 18 June.

Subsequently, the power to execute the conversion and subsequent write-down will apply to Additional Tier 1 capital instruments, which are the following:



| Issuer | ISIN | Amount outstanding | Number of instruments |
|---|---|---|---|
| Banco Popular Español, S.A. | XS0979444402 | €499,985,000 | 5,000 |
| Banco Popular Español, S.A. | XS1189104356 | €749,988,000 | 3,750 |
| Popular Capital, S.A. | DE0009190702 | €64,695,000 | 64,695 |
| Popular Capital, S.A. | DE000A0BDW10 | €19,115,000 | 19,115 |
| Popular Capital, S.A. | XS0288613119 | €5,400,000 | 108 |
| Pastor Participaciones Preferentes, S.A.U. | XS0225590362 | €7,359,000 | 7,359 |

Lastly, conversion of the nominal amount of the Tier 2 capital instruments is required as this is necessary to achieve the resolution objectives. The following issues will therefore be affected by this power:

| Issuer | ISIN | Amount outstanding | Number of instruments |
|---|---|---|---|
| Banco Popular Español, S.A. | ES0213790001 | €99,700,000 | 1,994 |
| Banco Popular Español, S.A. | ES0213790019 | €200,000,000 | 200,000 |
| Banco Popular Español, S.A. | ES0213790027 | €250,000,000 | 250,000 |
| BPE Financiaciones, S.A. | XS0550098569 | €91,700,000 | 1,834 |

6



| Issuer | Identifier (non-listed debt) | Amount outstanding (equivalent value in euros of outstanding balance) | Number of instruments |
|---|---|---|---|
| Total Bankshares Corporation | SUBORDINATED DEBT TOTAL BANK 1 | €10,978,957 | 12,000 |
| Total Bankshares Corporation | SUBORDINATED DEBT TOTAL BANK 2 | €10,978,957 | 12,000 |
| Total Bankshares Corporation | SUBORDINATED DEBT TOTAL BANK 3 | €10,978,957 | 12,000 |
| Total Bankshares Corporation | SUBORDINATED DEBT TOTAL BANK 4 | €10,978,957 | 12,000 |

It should be noted that the "Subordinated debt Total Bank" series of bonds are non-listed securities in US dollars, and the outstanding balances shown in the previous table are in euros, translated at the exchange rate prevailing on the date the information was reported by the entity. However, to convert these issues into shares with a par value of one euro each, the official exchange rate published by the Bank of Spain at the end of trading on the day prior to approval of this agreement (€1.1249 per share) will be used. In other words, every 1,000 US dollars of nominal of these securities would be converted into 888 shares of one euro each.

## 2. Actions needed to absorb losses as a result of executing the power to write down and convert

The FROB's execution of the power to write down and convert the capital instruments fulfils the instructions issued by the SRB in the resolution scheme and adheres to the provisions of Article 47 and Article 48.1 to 48.3 of Law 11/2015, of 18 June, as well as Article 21 of Regulation (EU) No 806/2014, of 15 July, and Articles 59 and 60 of Directive 2014/59/EU, of reference for the aforesaid regulation.

Specifically, the following actions must be taken:

a) Reduction of share capital to zero euros (€0) by writing down the shares currently outstanding to establish a non-distributable voluntary reserve.

b) Simultaneous execution of the capital increase to convert all the Additional Tier 1 capital instruments into share capital totalling one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), divided into shares of 1 euro par value each. Amendment of the bylaws.



c) Reduction of share capital to zero euros (€0) by writing down the shares subscribed by way of the conversion of the Additional Tier 1 capital instruments stipulated in the previous point, and to establish a non-distributable voluntary reserve.

d) Simultaneous capital increase to convert all the Tier 2 capital instruments into newly issued shares totalling six hundred and eight-four million, twenty-four thousand euros (€684,024,000), of 1 euro par value each. Amendment of the bylaws.

**a)  Reduction of share capital to zero euros (€0) by writing down the shares currently outstanding to establish a non-distributable voluntary reserve.**

Given that the economic value of Banco Popular has been found to be negative, and this has been confirmed by the price resulting from the sale of the entity as a resolution tool, it is necessary to adopt, as a first resolution, the reduction of the entity's share capital to zero by writing down the shares currently outstanding.

The resolution to reduce capital to zero adopted by the FROB in implementing the SRB resolution scheme is an administrative act as stipulated in Articles 35.1 and 64.1.d) of Law 11/2015, of 18 June. Thus and as stipulated in Article 65.1 of this law, the resolution to reduce capital to zero euros takes immediate effect from the moment it is adopted, without having to complete any formalities or comply with any legal or contractual requirements beyond those stipulated in Law 11/2015 and formal reporting, registration or disclosure obligations laid down in prevailing legislation. Further, as per Article 65.2 of the law, to enable the FROB to fulfil the resolution objectives and principles established in Articles 3 and 4 thereof, when exercising the general administrative powers set forth in the Law, the limitations and other requirements stipulated in the Consolidated Text of the Company Law approved by Legislative Royal Decree 1/2010, of 2 July, as regards operations of capital increase and reduction, conversion of capital instruments or internal recapitalisation, are not applicable. It will also not be necessary to prepare any of the mandatory reports stipulated in the aforesaid rules.

Nonetheless, the effectiveness of the capital reduction resolution is conditional upon execution of the capital increase which will now be referred to in point c), to the extent that one measure is connected to the other.

This measure thus respects one of the general principles governing resolution, set forth in Article 15.1.a) of Regulation (EU) No 806/2014, of 15 July, and Articles 4.1.a) and 39.1.a) of Law 11/2015, of 18 June: the shareholders of the institution under resolution bear first losses.

On the other hand, the reduction of share capital to zero by writing down all the shares must be performed in such a way as to safeguard one of the principles governing all resolution procedures: no shareholder or creditor shall incur greater losses than would have been incurred if the entity had been wound up under normal insolvency proceedings, as established in Article 15.1.g) of Regulation (EU) No 806/2014, of 15 July, and Article 4.1.d) of Law 11/2015, of 18 June.

To this end, points 16 to 18 of Article 20 of Regulation (EU) No 806/2014, of 15 July, stipulate that after the resolution actions in the resolution scheme have been effected, the SRB will appoint an independent expert to perform a valuation to determine if shareholders would have received better



treatment if Banco Popular had entered into normal insolvency proceedings. If said valuation determines that shareholders have incurred greater losses than would have been incurred if the entity had been wound up under normal insolvency proceedings, they would be entitled to obtain payment of the difference with a charge to the Single Resolution Fund, in accordance with Article 76.1.e) of Regulation (EU) No 806/2014, of 15 July 2014.

In this case, the independent expert has already estimated that the shareholders and creditors affected by the resolution measures in the resolution scheme do not incur losses greater than they would have been incurred if the entity had been wound up under normal insolvency proceedings when the resolution scheme was adopted pursuant to Article 20.9 of Regulation (EU) No 806/2014, of 15 July. Consequently, no payment would be made to compensate for the difference in treatment in normal insolvency proceedings compared to in the resolution process.

Regarding the scope of the write-down measure adopted in this resolution, as per Article 39.2 of Law 11/2015, of 18 June, it is a permanent write-down. No compensation is paid to holders, without prejudice to the compensation mechanism referred to above which, as stipulated, would not be applicable in this case. No liabilities to the holders of the written down shares shall remain, except for any liability already accrued or any liability for damages that may arise as a result of an appeal challenging the legality of the exercise of the write-down power.

The reduction of capital to zero is deemed to be a proportionate measure that is compatible with the resolution objectives and principles, and is intended to establish a voluntary reserve that can only be distributed as per the same requirements stipulated for capital reductions in Article 335.c) of the Consolidated Text of the Company Law, approved by Legislative Royal Decree 1/2010, of 2 July, in case of a capital reduction. Moreover, as it is a capital reduction to establish a non-distributable voluntary reserve, it involves a recomposition of the entity's equity, with the total amount of equity remaining the same.

**b)      Simultaneous execution of the capital increase without pre-emptive subscription rights to convert all the Additional Tier 1 capital instruments into share capital totalling one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), divided into shares of 1 euro par value each. Amendment of bylaws**

Once the principle establishing that shareholders will be the first to assume the losses is effected by reducing Banco Popular's capital to zero, and a non-distributable voluntary reserve has been created, all the Additional Tier 1 capital instruments issued by the Bank will be converted and the corresponding shares issued, which will involve a capital increase of one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), divided into shares of 1 euro par value each.

In this case, as there are no shareholders in the company and the shares are subsequently written down, no conversion formula needs to be applied and it can be agreed that the new shares will be issued at a rate of 1 euro each.

The ultimate aim of this conversion is to write down the shares into which the aforesaid capital instruments are converted. Thus, the action entails a conversion and subsequent write-down which



fulfils the principle according to which the next creditors in the order of priority to absorb losses after the shareholders are the holders of Additional Tier 1 capital instruments.

Capital is therefore declared subscribed and paid in full.

The conversion of the Additional Tier 1 capital instruments and the subsequent write down thereof entails exercising an administrative power recognised in Art. 64.1.e) of Law 11/2015, of 18 June. It is also an action fulfilling the condition set forth in the last paragraph of Art. 39.1, prohibiting the FROB from converting into capital or writing down one class of capital instruments until its subordinated class has not been converted into capital or written down in full. This hereby fulfils the resolution principle determining that the entity's creditors shall incur the losses deriving from the resolution after shareholders and in accordance with the relevant order of priority of claims, which places holders of Additional Tier 1 capital instruments in the echelon after the shareholders.

A logical consequence of these actions, as specified in Article 64.1.d) of Law 11/2015, of 18 June, is that Article 5 of Banco Popular's bylaws must be re-written to read as follows:

"Article 5. Share capital 1. Share capital amounts to one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), represented by 1,346,542,000 shares of 1 euro par value each."

**c) Reduction of share capital to zero euros (€0) by writing down the shares deriving from the conversion of the Additional Tier 1 capital instruments stipulated in the previous section, to establish a non-distributable voluntary reserve.**

The conversion approved in the previous section comprises an action prior to and inseparable from the subsequent write-down of the resulting shares by reducing the new share capital to zero in order to establish a non-distributable voluntary reserve.

Consequently, exercising the powers set forth in Article 64.1.d) of Law 11/2015, of 18 June, concerning the provisions of Article 35.1 of the same law, it is agreed to reduce the existing share capital of one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), divided into 1,346,542,000 shares of 1 euro par value each, to zero.

Once again, in this case it is the economic valuation of the entity by the independent expert and the sale price of the entity, as a resolution tool that ensures the resolution procedure is brought to a satisfactory close, justifying the need for the holders of said capital instruments to contribute to the absorption of losses through the write-down of their instruments.

The effectiveness of the capital reduction is conditional upon execution of the capital increase referred to in the following point, as one operation is connected to the other, and without prejudice to its immediate enforceability as per the terms of Articles 35.1, 64.2 and 65 of Law 11/2015, of 18 June, cited above in point a) of this principle of law.

As in the previous decision to reduce share capital to zero, in this case the reduction is intended to establish a voluntary reserve that can only be distributed as per the same requirements stipulated



for capital reductions in Article 335.c) of the Consolidated Text of the Company Law, approved by Legislative Royal Decree 1/2010, of 2 July.

It should be pointed out that the write-down agreed herein safeguards another of the principles governing the resolution, set forth in Article 4.1.d) of Law 11/2015, of 18 June, according to which no shareholder or creditor shall incur greater losses than would have been incurred if the entity had been wound up under normal insolvency proceedings.

**d) Simultaneous capital increase without pre-emptive subscription to convert all the Tier 2 capital instruments into newly issued Banco Popular shares totalling six hundred and eight-four million, twenty-four thousand euros (€684,024,000), of 1 euro par value each, and amendment of the bylaws.**

Under the powers set forth in Article 64.1.e) of Law 11/2015, of 18 June, and in accordance with point 2 of said article, it is agreed to increase Banco Popular's share capital by six hundred and eight-four million, twenty-four thousand euros (€684,024,000), divided into 684,024,000 shares of 1 euro par value each.

In this instance, the conversion of all Tier 2 capital instruments is intended to increase the entity's share capital to the aforementioned amount and enable the entity to be sold – which will be covered later in this document – with the shares resulting from the conversion the object of the transfer.

In this case, as there are no shareholders in the company and the shares are to be sold thereafter, no conversion formula needs to be applied and it can be agreed that the new shares will be issued at a rate of 1 euro each.

Capital is therefore declared subscribed and paid in full.

Once again, the conversion of the aforesaid capital instruments into shares requires Article 5 of Banco Popular's bylaws to be amended, under the powers set out in Article 64.1.d) of Law 11/2015, of 18 June, and express annulment of the previous wording thereof. The new wording of Article 5 of the bylaws will therefore read as follows:

"Article 5. Share capital 1. Share capital amounts to six hundred and eight-four million, twenty-four thousand euros (€684,024,000), represented by six hundred and eight-four million, twenty-four thousand (684,024,000) shares of 1 euro par value each."

**3.   Additional actions**

Banco Popular Español, S.A. is appointed as Agent Bank to perform all the transactions underpinning the conversion and write-down of the capital instruments described vis-à-vis IBERCLEAR, EUROCLEAR and CLEARSTREAM. The Agent Bank will provide all necessary information on subscribers of the shares issued as a result of the previously agreed conversions.

IBERCLEAR will be appointed to keep the book-entry registers for the new shares.



The transactions described in points 2.a), b), c) and d) above will be recorded in the accounting registers of IBERCLEAR, EUROCLEAR and CLEARSTREAM using the positions registered at these entities at the end of the settlement processes on 8 June 2017 ("record date").

## FOUR. IMPLEMENTATION OF THE RESOLUTION TOOL INVOLVING THE SALE OF THE ENTITY

As explained beforehand, the SRB has established in its resolution scheme that the resolution tool that must be applied to Banco Popular is the sale of the entity's business, in accordance with Articles 22 and 24.1.a) of Regulation (EU) No 806/2014, of 15 July 2014, which stipulates that the sale of business tool may consist of the transfer of the instruments of ownership issued by the institution under resolution.

As a necessary step prior to determining the sale of the entity as the resolution tool to be applied, the SRB resolved in an Extended Executive Session on 3 June that the FROB should begin an open tender process to sell the entity, setting out the procedural requirements for such a process, in accordance with  Article 24 of Regulation (EU) No 806/2014, Articles 38 and 39 of Directive 2014/59/EU, Article 26 of Law 11/2015, and Article 34 of Royal Decree 1012/2015. In this decision, the SRB notified the FROB of the option, in light of the gravity of the situation of the entity, of determining existing market interest based on the non-binding offers that had been received in the private process of sale conducted by the entity.

On 3 June, the FROB Governing Committee acknowledged the decision adopted by the SRB regarding the sale process of Banco Popular, and approved its procedural rules, as per the requirements set out in SRB Decision. The SRB decision explicitly considered the possibility of the sale process being undertaken regardless of whether the final resolution scheme included the sale of the business or any other resolution tool, depending on the circumstances prevailing at the time of approval of said scheme. Pursuant to the procedural rules approved by FROB's Governing Committee, the open tender process had to meet the following conditions:

a) The process must be as transparent as possible, given the special circumstances of the case and, specifically, the need to preserve financial stability.
b) The key objective of the sale must be to maximise the sale price.
c) Notwithstanding the above, the process must not confer any unfair advantage on a potential purchaser.
d) The FROB will take the necessary steps to avoid conflicts of interest.

To this end and based on the SRB's powers, having due regard to the limited time available given the urgency of the case and in compliance with the requirement referred to in point a), potential interest in the entity was analysed based on the preliminary work that had been conducted by the entity during the private sale process.

During this procedure, interested parties signed pertinent confidentiality agreements and they were given access to the virtual data room set up by the entity as part of the private sale process carried out by it, granting them the time needed to submit binding offers.

Once the open tender process to sell the entity closed, the SRB has concluded that the marketing requirements and commercial terms set forth in Article 24.2 of Regulation (EU) No 806/2014 and



Article 39 of Directive 2014/59/EU have been met. It has also concluded that fulfilment of the principles and objectives for the entity's resolution can only be met within a period of time of less than a week by applying the sale of business tool, ensuring a purchaser is found that can meet the capital requirements needed to execute the purchase, with the option of integrating the entity into its group and absorb the significant size of the entity's balance sheet.

In light of the aforesaid and as the offer submitted by Banco Santander was the only one to fulfil the requirements for acceptance, the SRB has decided to accept the offer given the effects possible insolvency proceedings could have on the continuity of the entity's critical functions.

In compliance with the requirements set forth by the SRB in the resolution scheme, by virtue of this Resolution, all of the Banco Popular shares existing after executing the agreements described in the previous principle of law are hereby transferred to Banco Santander as the sole purchaser as per Article 26.1 of Law 11/2015. As per point 2 of said article, the statutory restrictions on the right to attend meetings of the Board or the right to vote do not apply to the purchaser, nor does the obligation to make a public takeover bid in accordance with legislation governing the securities market.

Consequently, pursuant to Article 26 of Law 11/2015 vis-à-vis the provisions of Article 25.1.a) and Article 64.c) of said law, it is agreed to transfer all the shares comprising Banco Popular's share capital, and subsequent to the settlement of all positive balances at the end of 8 June as instructed by the SRB, issued as a result of the conversion of Tier 2 capital instruments, in exchange for one euro (€1). This consideration has been offered for all the shares issued following conversion of the Tier 2 capital instruments and after writing down the entity's shares and converting and writing down the Additional Tier 1 capital instruments.

The transfer referred to in the previous paragraph is performed on behalf of and in the name of shareholders as per Article 25.7 of Law 11/2015 and therefore, without the need to obtain their consent or that of third parties other than the purchaser and without having to fulfil the procedural requirements laid down in relation to modifying the structures of corporations.

The sale price of the entity must be distributed in the following order and manner:

- To settle all reasonable expenses incurred by the SRB and the FROB to prepare the resolution scheme and share transfer, as per Article 20.6 of Regulation (EU) No 806/2014 and Article 25.4 of Law 11/2015.
- To the holders of Tier 2 capital instruments on the date the agreements set forth in the previous principle of law were executed, in accordance with Article 25.5 of Law 11/2015.

13



In light of the above, in order to implement the resolution actions and resolution tools adopted by the SRB concerning Banco Popular Español, S.A. and following the SRB's instructions, this Governing Committee

**HEREBY AGREES**

**One. To reduce Banco Popular Español, S.A.'s current share capital from two billion, ninety-eight million, four hundred and twenty-nine thousand and forty-six euros (€2,098,429,046.00) to zero (€0) by writing down all the four billion, one hundred and ninety-six million, eight hundred and fifty-eight thousand and ninety-two (4,196,858,092) shares currently outstanding, in order to establish a non-distributable voluntary reserve, in accordance with Articles 35.1 and 64.1.d) of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms.**

**Two. To simultaneously carry out a capital increase without pre-emptive subscription rights to convert all the Additional Tier 1 capital instruments into share capital totalling one billion, three hundred and forty-six million, five hundred and forty-two thousand euros (€1,346,542,000), divided into shares of 1 euro par value each; and to amend the bylaws accordingly, as per Article 64.1.e) of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms.**

**Three. To reduce share capital to zero (€0) by writing down the shares resulting from the conversion of the Additional Tier 1 capital instruments approved in the previous section, to establish a non-distributable voluntary reserve, in accordance with Articles 64.1.d) and 35.1 of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms.**

**Four. To simultaneously approve a capital increase without pre-emptive subscription rights to convert all the Tier 2 capital instruments into newly issued Banco Popular shares totalling six hundred and eight-four million, twenty-four thousand euros (€684,024,000), of 1 euro par value each; and to amend the bylaws accordingly, as per Articles 64.1.e) and 64.2 of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms.**

**Five. To appoint Banco Popular Español, S.A. as Agent Bank to perform all the transactions needed to convert and amortise the capital instruments described in the previous sections.**

**Six. To transfer all the Banco Popular Español, S.A. shares issued as a result of the conversion of the Tier 2 capital instruments to Banco Santander, S.A. as referred to in Principle of Law Three, pursuant to Article 26 of Law 11/2015, of 18 June, on the recovery and resolution of credit institutions and investment firms.**

**Seven. Publication, effectiveness and proceedings against the aforesaid agreements.**

In accordance with Article 29.5 of Regulation (EU) No 806/2014, Article 83 of Directive 2014/59/EU, Article 32 of Royal Decree 1012/2015, and Article 49 of Commission Delegated Regulation (EU) 2016/1075, it is agreed to report this agreement to Banco Popular Español, S.A., the European Central Bank, the Bank of Portugal, the US Federal Reserve, the Mexican National Banking and



Securities Commission, the Bank of Spain, the Deposit Guarantee Fund, the Single Resolution Board, the Ministry of Economy, Industry and Competitiveness, the European Systemic Risk Board, the European Commission, the European Securities Market Authority, the European Insurance and Occupational Pensions Authority, the European Banking Authority, Iberclear, Clearstream, Clearstream Lux and Euroclear.

It is agreed to publish or order the publication of this Resolution on this body's website, and on the websites of the Bank of Spain, the European Banking Authority, Banco Popular Español, S.A., and the Spanish National Securities Market Commission (CNMV), and through any means used by Banco Popular Español, S.A. to disseminate the information regulated by Article 21.1 of Directive 2014/109/EC.

Banco Popular Español, S.A. must ensure any investors affected by this agreement are aware of it, by publishing the agreement on its website and as a material disclosure on the CNMV's website and the official price listings of the markets on which the affected securities are admitted to trading (Irish Stock Exchange).

With regard to the effectiveness of all the agreements adopted in this Resolution, as per Article 65.1. of Law 11/2015: *"The administrative acts pronounced by the FROB to apply the tools stipulated in Chapter V, and the agreements adopted pursuant to Article 63.c) will take immediate effect on adoption, without the need to carry out any procedures or fulfil any requirements established in law or contractually, without prejudice to the requirements of this law and the formal duties of disclosure, registration and reporting laid down in prevailing law. These duties can be fulfilled by issuing a certificate of the corresponding administrative act or agreement, without the need to obtain reports from independent experts or auditors".*

Consequently, in light of Article 65 of Law 11/2015, the administrative certification of this agreement adopted as an administrative act as per Article 64.c) and d) of Law 11/2015 is legally sufficient to file the necessary entries in the Companies Register in accordance with Articles 318 and 327 of the Regulations of the Companies Register, and to issue the necessary notices in the Official Gazette of the Companies Register, notwithstanding any additional disclosures required in accordance with Article 69 of Law 11/2015.

**Proceedings to be brought contesting this Resolution:**

**Against the resolution scheme approved by the Single Resolution Board**

According to Article 86 of Regulation (EU) No 806/2014, proceedings may be brought before the European Union's Court of Justice contesting the resolution scheme approved by the Single Resolution Board referred to in background fact three of this Resolution within two months of the publication of this Resolution.

**Against this Resolution through which the resolution scheme approved by the Single Resolution Board is implemented**

The current agreements through which the FROB implements the resolution scheme approved by the Single Resolution Board bring to a close the administrative appeal process. An appeal requesting reversal may be filed in accordance with Articles 123 et seq of Law 39/2015, of 1 October, on the



Common Administrative Procedure of Public Administrations, within a month from the day after the Resolution is published. An appeal for a judicial review may also be filed before the Contentious-Administrative Chamber of the National Court within the two-month period stipulated in Article 46 of Law 29/1998, of 13 July, on the Contentious-Administrative Jurisdiction.