# EXHIBIT 3

**COOPERATION ARRANGEMENT CONCERNING THE
RESOLUTION OF INSURED DEPOSITORY INSTITUTIONS AND CERTAIN OTHER
FINANCIAL COMPANIES WITH CROSS-BORDER OPERATIONS IN
THE UNITED STATES AND THE EUROPEAN BANKING UNION**

In view of the growing globalization of the world's financial markets and the increase in cross-border operations and activities of financial service firms, including large complex insured depository institutions, the Federal Deposit Insurance Corporation ("FDIC") of the United States of America ("United States" or "U.S.") and the Single Resolution Board ("SRB") have reached this Cooperation Arrangement ("CA") on the exchange of information and cooperation in connection with the Resolution planning and the implementation of such planning with respect to Firms with cross-border operations. The FDIC and SRB express, through this CA, their willingness to cooperate with each other in the interest of fulfilling their respective statutory objectives; enhancing communication and cooperation; assisting each other in the planning and the conduct of an orderly Resolution of a Firm; and maintaining confidence and financial stability in the United States and the European Banking Union.

**SECTION ONE: DEFINITIONS**

1. The following terms used in this CA will have the following meaning:

    A. "Authority" means the FDIC or the SRB;

    (i) "Requested Authority" means the Authority to whom a request is made under this CA; and

    (ii) "Requesting Authority" means the Authority making a request under this CA.

    B. "Authorities" means the FDIC and the SRB.

    C. "Emergency Situation" means any circumstance in which the financial or operational condition of a Firm has been materially impaired, or can reasonably be expected to be materially impaired, in a manner likely to affect the cross-border operations of the Firm and requiring consultation or coordination by the Authorities.

    D. "European Banking Union" means, collectively, the Participating Member States.

    E. "Firm" means:

    (i) a Person designated as a globally systemically important financial institution by the Financial Stability Board, authorized as a credit institution that is a depository institution, or any other entity that provides financial services, including but not limited to any Person which is subject to or designated for enhanced prudential supervision by the Board of Governors of the Federal Reserve System (as defined below) under 12 U.S.C. § 5301 et seq. (codification of the relevant provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act")) and which, in any case, is

engaged in financial services activities in the United States and/or the European Banking Union; and

(ii) a Person that is owned or controlled by any Person identified in subparagraph (i) above.

F. "National Competent Authority" means a national competent authority designated by a Participating Member State in accordance with Regulation (EU) No 575/2013 of the European Parliament and of the Council of 26 June 2013 on prudential requirements for credit institutions and investment firms (OJ L 176, 27.6.2013, p. 1) and Directive 2013/36/EU, and specified in Appendix B-Section 2.

G. "National Resolution Authority" means a national resolution authority as defined in accordance with Article 3(1)(3) of the Regulation (EU) No 806/2014 of the European Parliament and of the Council of 15 July 2014 establishing uniform rules and a uniform procedure for the resolution of credit institutions and certain investment firms in the framework of a Single Resolution Mechanism ("SRM") and a Single Resolution Fund and amending Regulation (EU) No 1093/2010 (OJ L 225, 30.7.2014, p. 1) ("SRM Regulation"), and specified in Appendix B-Section 1.

H. "Other Governmental Entity" means any one of:

(i) the FDIC, the U.S. Treasury Department, the Board of Governors of the Federal Reserve System and individual Federal Reserve Banks, the Office of the Comptroller of the Currency, or the Securities and Exchange Commission; or

(ii) the SRB, the European Central Bank, the European Banking Authority, the National Resolution Authorities (as set forth in Appendix B-Section 1), and National Competent Authorities (as set forth in Appendix B-Section 2) of Participating Member States.

I. "Participating Member State" means a Member State of the European Union whose currency is the Euro or a Member State of the European Union whose currency is not the Euro and which has established a close cooperation in accordance with Article 7 of the Council Regulation (EU) No 1024/2013 of 15 October 2013 conferring specific tasks on the European Central Bank concerning policies relating to the prudential supervision of credit institutions (OJ L 287, 29.10.2013, p. 63) ("Single Supervision Mechanism Regulation").

J. "Person" means a natural person, unincorporated association, partnership, trust, investment company, or corporation.

K. "Resolution" means actions taken by an Authority to address an Emergency Situation involving a troubled Firm, consonant with its statutory mandate, being:

(i) in respect of the FDIC, through supervisory or regulatory action, applications for judicial action, administration, conservatorship, receivership, liquidation, establishment of a bridge bank or bridge

        financial company, approval or arrangement of the sale or merger of a troubled Firm, or the transfer of part or all of the Firm's property to a private sector purchaser, or any other action permitted under relevant statutes and laws; and

    (ii)    in respect of the SRB, through the application of its tasks of a single resolution authority as part of the SRM in accordance with the SRM Regulation.

**SECTION TWO:  GENERAL FRAMEWORK**

2. This CA is a statement of intent to consult, cooperate, and exchange information in connection with the implementation of Resolution of Firms in the United States and in the European Banking Union in a manner consistent with and permitted by the laws and requirements that govern the Authorities. The Authorities will take steps to continue and enhance ongoing cooperation and communication through periodic and ad hoc consultations between them, both during normal business-as-usual circumstances and during periods of financial stress. As the condition of a Firm deteriorates, it is expected that cooperation between the Authorities will intensify as well. Additional communications may take place under the terms of this CA or as otherwise agreed by the Authorities.

3. The SRB fulfils the tasks of a European resolution authority as part of the SRM in accordance with the SRM Regulation. The main aims of the SRM are to ensure effective and uniform resolution rules and equal conditions of resolution financing across Participating Member States under a centralized power of resolution. The SRB is responsible for the collection of information and the cooperation with National Resolution Authorities for the elaboration of resolution planning for entities under its scope, including the assessment of resolvability and the determination of the minimum requirement for own funds and eligible liabilities. In performing its tasks the SRB works with other relevant authorities, which in some instances are the primary sources of certain relevant information and with which requests for such information must be coordinated. It is responsible for the adoption and monitoring of execution of resolution schemes for all entities falling under its direct scope of responsibilities as set by the SRM Regulation. In accordance with Article 18(7) of the SRM Regulation, the European Commission and the Council of the European Union are responsible for approving of or objecting to the resolution scheme adopted by the SRB with regard to the scheme's discretionary aspects. Moreover, pursuant to Article 7(3) and 31(1) of the SRM Regulation, the SRB shall receive from National Resolution Authorities any draft decisions on which it may express its views. In case of non-compliance and where necessary to ensure the consistent application of high resolution standards the SRB may issue warnings to the relevant National Resolution Authority. Furthermore, the SRB may at any time decide to exercise direct powers under Article 7(4) of the SRM Regulation. The SRB shall also represent National Resolution Authorities of the Participating Member States for the purpose of consultation and cooperation with Non-Participating Member States or third countries pursuant to Article 32(1) of the SRM Regulation and conclude cooperation arrangements on behalf of National Resolution Authorities of Participating Member States pursuant to Article 32(4) of the SRM Regulation. This does not affect the FDIC's ability to communicate, share information and establish relations with National Resolution Authorities, provided that the FDIC informs the SRB accordingly.

4. The FDIC is an independent U.S. federal supervisory authority, and is the Resolution Authority for insured depository institutions and covered financial companies (as defined in Section 201(a)(8) of the Dodd-Frank Act (12 U.S.C. § 5381(a)(8))). Its role, so far as is relevant to this CA, is limited to the planning and implementation of Resolutions (which may include monitoring of Firms, crisis management activities and review of recovery plans). As conservator or receiver, it is responsible for resolving all insured depository institutions and covered financial companies. In performing these and related functions, the FDIC works with other relevant authorities, which in some instances are the primary sources of certain relevant information and with which requests for such information must be coordinated.[1] The remaining provisions of this CA shall be interpreted having regard to the role of the FDIC as described in this paragraph.

5. This CA expresses the Authorities' intent to enhance and strengthen their consultation and cooperation in understanding the complexities inherent in the cross-border operations of Firms, in conducting cooperative analyses of the challenges in the Resolution of such Firms, and in contingency planning for such challenges and Resolutions.

6. This CA does not create any legally binding obligations, confer any rights, modify or supersede any domestic laws, or restrict the Authorities in the exercise of their statutory powers and functions. This CA does not confer any rights upon any Person, including any right or ability directly or indirectly to obtain, suppress, or exclude any information or to challenge the execution of a request for assistance under this CA.

7. The Authorities acknowledge that any particular assistance, information or cooperation may be provided pursuant to the CA only if permitted under their respective laws, regulations or requirements.

8. This CA does not affect any arrangements under other agreements or memoranda of understanding, including any U.S. Firm-specific cooperation agreements or authorizations with respect to access to any Dodd-Frank Act Title I information; nor does this CA limit the terms of future arrangements.

9. This CA does not limit an Authority to taking solely those measures described herein in fulfillment of its Resolution or other functions. In particular, this CA does not affect any right of an Authority to communicate with, conduct an on-site visitation of, or obtain information or documents from, any Person subject to its jurisdiction that is located in the territory of the other Authority.

10. The Authorities intend that the cooperation and information sharing arrangements under this CA should be implemented in a manner that is compatible with the obligations and commitments that an Authority may have to an asset management, banking or other regulatory authority or agency pursuant to memoranda of understanding or other agreements.

---

[1] For example, the Federal Reserve Board has primary responsibility for recovery planning in the United States, and release of information concerning recovery plans must therefore be made in coordination with the Federal Reserve Board.

11. The Authorities intend periodically to review the functioning and effectiveness of cooperation arrangements between them with a view, inter alia, to expanding or altering the scope or operation of this CA should that be judged necessary. Such periodic review will seek to ensure that this CA accommodates and responds to changing circumstances and benefits from lessons learned. It will also be updated if there are material developments – for example, changes to either of the Authorities' responsibilities – that are likely to impact the way the FDIC and SRB work together.

**SECTION THREE:   COMMON PRINCIPLES REGARDING RESOLUTIONS OF FIRMS WITH CROSS-BORDER OPERATIONS**

12. Managing a crisis involving the cross-border activities of a Firm is a matter of common interest for the United States and the European Banking Union. The successful management and Resolution of a crisis involving a Firm with significant cross-border activities in the United States and the European Banking Union requires careful ex ante preparation to establish optimal processes and steps to ensure effective coordination and implementation of possible monitoring of Firms, crisis management, recovery and Resolution strategies.

13. Arrangements and tools for cross-border resolution should be flexible and designed to allow for adaptation to the specific features of a crisis and the individual institutions involved. Cross-border arrangements will build on effective resolution regime arrangements and cooperation between the Authorities and the Authorities should undertake steps to improve their ability promptly to assess the broader effects of any financial crisis and its cross-border implications based on common terminology and analyses.

14. Where possible and appropriate, arrangements for crisis Resolution should be consistent with arrangements for supervision and crisis prevention. In particular, arrangements for crisis Resolution should reflect the division of responsibilities between the Authorities and other responsible regulators and supervisors, and the coordinating role of home country regulators and supervisors. Where possible and feasible, the Authorities should implement Resolution options that are consistent with their respective resolution objectives, in particular aimed at pursuing financial stability and protecting insured depositors, insurance policy holders and other retail customers, duly considering the potential impact of their Resolution actions on the financial stability of the United States and the European Banking Union.

15. The Authorities recognize the importance of the cross-border crisis management groups ("CMGs") as developed by the Financial Stability Board ("FSB") under the Financial Stability Forum ("FSF") *Principles for Cross-border Cooperation on Crisis Management* (April 2009) and the FSB *Recommendations on Reducing the Moral Hazard posed by Systemically Important Financial Institutions* (2010), and intend to work together to ensure that the CMGs in which they jointly participate effectively strengthen institution-specific cross-border Resolution preparation and arrangements, consistent with the FSF *Principles for Cross-border Cooperation on Crisis Management* (April 2009) and the FSB *Key Attributes of Effective Resolution Regimes for Financial Institutions* as adopted by the G20 at the Cannes Summit in November 2011 and as amended in October 2014.

**SECTION FOUR: MECHANISM AND SCOPE OF RESOLUTION CONSULTATION, COOPERATION, AND EXCHANGE OF INFORMATION**

16. The Authorities recognize the importance of close and effective communication concerning the global operations of Firms, and intend to consult regularly regarding general Resolution developments, including the sharing of all relevant information, including, to the extent permitted by applicable law and not contrary to public policy, Firm-developed recovery plans and agency-developed Resolution plans pertaining to the group as a whole or to individual subsidiaries where plans of subsidiaries exist, and issues relevant to the operations, activities, and regulation of such Firms. Furthermore, the Authorities will seek to enhance cooperation in the analysis of Firms' Resolution issues, planning for potential Resolution scenarios, and appropriate simulations, contingency planning or other work designed to improve preparations of the Authorities for managing and resolving crises involving Firms.

17. The Authorities will also work with Other Governmental Entities and with Firms themselves in developing Resolution plans and strategies for Firms and in ensuring that such plans and strategies remain current. To the extent possible, in respect of any confidentiality and other restrictions, the Authorities intend to (i) discuss approaches to Resolution planning, (ii) share ideas and strategies and (iii) facilitate mutual understanding of Resolution plan rulemaking, rules, practice and implementation in each other's jurisdiction.

18. To the extent practicable, and as appropriate in the particular circumstances, including the status of efforts to address any difficulties experienced by a Firm, each Authority will endeavor to inform the other Authority (i) in advance of regulatory changes relating to Resolution regimes and which may have a significant, material impact on the operations or activities of a Firm in the other jurisdiction, and (ii) of the respective statutory and other legal requirements, including procedural requirements, applicable to the recognition and enforcement of foreign resolution proceedings under their respective jurisdictions. This will, however, be without prejudice to any arrangements relating to specific prudential issues.

19. Each Authority will make available staff as appropriate to give presentations to, and run training sessions for, the other Authority, to share expertise and knowledge.

20. Each Authority will designate a contact person or persons of sufficient seniority ex ante, to be involved in ongoing Resolution and crisis management of Firms. These contact people will be listed in Appendix A to this CA. Each Authority will inform the other Authority of these appointments and any changes thereto. One contact person for the FDIC will be the Director of the Office of Complex Financial Institutions. Senior level contacts will be supported by regular working-level contact and collaboration, potentially including joint work on issues of common interest.

21. To the extent necessary to supplement periodic consultations, and so far as consistent with any Firm-specific cooperation agreements agreed by both parties through any Firm's Crisis Management Group and with ensuring compliance with the laws or regulations of the United States or the European Union (including the European Banking Union), the Authorities intend to cooperate with each other in

assisting with Resolution planning (including implementation of such planning). The assistance covered by this paragraph may include, as appropriate to each Firm, and in accordance with the rights of each Authority to collect or otherwise obtain information, providing:

    (i) Information relevant to the financial and operational condition of a Firm, including, for example, capital structure, liquidity, and funding profiles, internal controls procedures, external market or ratings information, entities and locations providing important operational capabilities, and identification of materially significant subsidiaries, branches and affiliates, such as entities engaged in capital markets, information technology and data processing services;

    (ii) Assistance in interpreting requested information, if such assistance is needed; and

    (iii) Assistance in obtaining other information located in the Requested Authority's jurisdiction that may be relevant to the Requesting Authority's planning and implementation of Resolutions.

In addition, the Authorities will discuss and agree on the information each should provide to the other for the purpose of planning and implementing Resolutions (which may include monitoring of Firms, crisis management activities and review of recovery and Resolution plans).

22. The Authorities recognize that communication and coordination can play an important role in promoting efficiency and preserving value in the Resolution of a Firm. The Authorities further acknowledge that their legal duties and objectives will often align with the goals of maximizing recoveries, minimizing losses and minimizing moral hazard. Where this is the case, they will endeavor, subject to applicable laws and regulations, to cooperate and coordinate in order to identify and implement Resolution processes and joint communication strategies that meet these goals in both of their respective jurisdictions. For this purpose, both Authorities will provide a list of relevant units and responsible persons with their contact information in Appendix A to this CA.

23. The Authorities recognize that there may from time to time be technical matters related to specific resolution plans and resolution cases upon which it might be necessary to take a broadly common view or position. Through regular dialogue the Authorities will seek to identify such matters. To the extent that the respective objectives of the Authorities can be best advanced through a joint articulation of such view or position and/or through joint engagement with third parties, the Authorities will seek to do so.

24. English will be the working language in all written and spoken communication.

**SECTION FIVE: EXECUTION OF REQUESTS FOR ASSISTANCE**

25. To the extent possible, a request for information pursuant to Section Four should be made in writing, and addressed to the relevant contact person(s) in Appendix A. A request should generally specify the following:

    A. The information sought by the Requesting Authority;

7

      B. A general description of the matter which is the subject of the request and the purpose for which the information is sought; and

      C. The desired time period for reply and, where appropriate, the urgency thereof.

26. In Emergency Situations, the Authorities will endeavor to notify each other of the Emergency Situation and communicate information to the other as would be appropriate in the particular circumstances, taking into account all relevant factors, including the status of efforts to address the Emergency Situation. During Emergency Situations, requests for information may be made in any form, including orally, provided such communication is confirmed subsequently in writing. The Authorities will endeavor to provide information as quickly as possible during Emergency Situations.

**SECTION SIX: PERMISSIBLE USES AND CONFIDENTIALITY OF INFORMATION**

27. It is understood that information may be shared pursuant to this CA to the extent such sharing is reasonable and subject to any relevant statutory and regulatory provisions, including those restricting disclosure. In addition, the provision of, or request for, information under this CA may be denied on grounds of public interest or national security, or when disclosure would interfere with an ongoing investigation.

28. Any confidential information received from a Requested Authority will be used only for the planning and implementation of Resolutions (which may include monitoring of Firms, crisis management activities and review of Resolution plans). To the extent permitted by law, a Requesting Authority will hold confidential all information (other than publicly available information) received from a Requested Authority pursuant to this CA and will not disclose such information other than as necessary to carry out its Firm monitoring, crisis management, Resolution planning or implementation responsibilities and consistent with paragraphs 29, 30, and 31.

29. Except as provided in paragraph 30, before a Requesting Authority discloses any confidential information received from a Requested Authority to a third party, the Requesting Authority will request and obtain prior written consent from the Requested Authority, which will not be unreasonably withheld.

30. In the event that a Requesting Authority is required by statute or legal process[2] to disclose confidential information provided pursuant to this CA, it will, to the extent permitted by law,[3] inform the Requested Authority about such possible onward sharing. If the Requested Authority does not consent to such disclosure, then, the Requesting Authority will take all available and appropriate steps to resist disclosure, including by employing legal means to challenge the order or by advising the third party requiring such information of the possible negative

---

[2] In the case of the SRB, this may mean sharing with the European Commission, the Council of the European Union, and the European Central Bank.
[3] For example, a subpoena or court order requesting information may bar the FDIC from disclosing the existence of such subpoena or order.

consequences that such disclosure might have on the future exchange of confidential information between the Authorities.[4]

31. With respect to paragraph 29, the SRB represents that it is required by Article 30 (2) of the SRM Regulation to disclose on an ongoing basis during business as usual (for example, to individual members of internal resolution teams), confidential information with the National Resolution Authorities listed in Appendix B-Section 1 hereto (the "Onward Sharing Recipients"). The SRB further represents that obtaining consent of, or providing notice to, the FDIC prior to such disclosure to the Onward Sharing Recipients would prove burdensome in light of the ongoing nature of this requirement to disclose. The SRB may therefore disclose confidential information to the Onward Sharing Recipients on a need to know basis pursuant to this requirement, subject to the following condition:

Before disclosing confidential information to the Onward Sharing Recipients, the SRB will obtain assurance from each Onward Sharing Recipient receiving such confidential information, that, in addition to such professional secrecy requirements as may be required by law, the confidential information will not be further disclosed by the Onward Sharing Recipient, except to other persons listed on Appendix B-Section 1 on a need-to-know basis or as authorized by the SRB after the SRB obtains the FDIC's written consent.

32. No privileges or confidentiality associated with information provided by an Authority are intended to be waived as a result of sharing such information pursuant to this CA.

**SECTION SEVEN: REVIEW AND AMENDMENT**

33. Authorities may review the functioning and effectiveness of cooperation and information exchange under this CA, either every two years, or after an earlier interval when deemed necessary by both Authorities.

34. Any amendment to this CA requires mutual consent of the Authorities and will be confirmed in writing unless otherwise agreed upon.

**SECTION EIGHT:  TERMINATION**

35. Cooperation in accordance with this CA will commence as of the date written below and continue indefinitely subject to modification by the mutual consent of the Authorities or termination by an Authority with 30 days advance written notice to the other Authority.  After termination, the confidentiality provisions in Section Six will continue to apply to any information provided under this CA prior to termination.

---

[4] Such steps also would be taken as appropriate in the context of the instances referred to in Footnote 3.

Signed at __Brussels, Belgium__         ,  Signed at __Brussels, Belgium__         ,

this __28__ day of September____, 2017  this _28___ day of September_____, 2017

_____  _____
      Martin J. Gruenberg                           Elke König
      Chairman                                         Chair
      Federal Deposit Insurance Corporation    Single Resolution Board

APPENDIX A

**Federal Deposit Insurance Corporation**

Headquarters:   550 17th St. NW
                Washington DC 20429
                United States of America

Arthur J. Murton or Successor
Director, Office of Complex Financial Institutions
Tel: +1-202-898-3938

Ricardo R. Delfin (Acting) or Successor
Deputy Director, International Coordination Branch
Office of Complex Financial Institutions
Tel: +1-202-898-7073

Doreen R. Eberley or Successor
Director, Division of Risk Management Supervision
Tel: +1-202-898-6877

James C. Watkins or Successor
Senior Deputy Director, Supervisory Examinations
Division of Risk Management Supervision
Tel: +1-202-898-6556

Bret D. Edwards or Successor
Director,
Division of Resolutions & Receiverships
Tel: +1-202-898-6525

Please e-mail your request to the Contact Persons listed above at the following e-mail address: OCFI-International@fdic.gov

**Single Resolution Board**

Headquarters:   Treurenberg 22
                B-1049 Brussels
                Belgium

Elke König or Successor
Chair of the SRB
Tel: +32 249 03 582

Mauro Grande or Successor
Director of Resolution Strategy and Cooperation
Tel: +32 249 03 563

Nadège Jassaud or Successor
Head of Unit, Resolution Strategy, Processes and Methodology
Tel: +32 249 03 572

Samy Harraz or Successor
Head of Unit, Policy Coordination and International relations
Tel: +32 249 03 568

Paolo Santella or Successor
Head of Unit, Cooperation with Stakeholders
Tel: +32 249 03 625

Please e-mail your request to the Contact Persons listed above at the following e-mail address: SRB-Cooperation@srb.europa.eu

APPENDIX B-Section 1

| Member State | National Resolution Authorities |
|---|---|
| Austria | Austrian Financial Market Authority (FMA) |
| Belgium | National Bank of Belgium |
| Cyprus | Central Bank of Cyprus |
| Estonia | Estonian Financial Supervision Authority |
| Finland | Finnish Financial Stability Authority |
| France | Autorité de contrôle prudentiel et de résolution |
| Germany | Bundesanstalt für Finanzmarktstabilisierun (FMSA) |
| Greece | Bank of Greece - Resolution Unit |
| Ireland | Central Bank of Ireland |
| Italy | Banca d'Italia - Financial Supervision and Regulation |
| Malta | Malta Financial Services Authority |
| Latvia | Financial and Capital Market Commission |
| Lithuania | Bank of Lithuania |
| Luxembourg | Commission de Surveillance du Secteur Financier |
| Portugal | Banco de Portugal |
| Slovakia | Slovak Resolution Council |
| Slovenia | Banka Slovenije |
| Spain | Fondo de Reestructuración Ordenada Bancaría (FROB) |
| The Netherlands | De Nederlandsche Bank - Resolution Division |

APPENDIX B-Section 2

| Member State | National Competent Authorities |
|---|---|
| Austria | Finanzmarktaufsicht |
| Belgium | Nationale Bank van België / Banque Nationale de Belgique |
| Cyprus | Central Bank of Cyprus |
| Estonia | Finantsinspektsioon |
| Finland | Finanssivalvonta |
| France | Autorité de contrôle prudentiel et de résolution |
| Germany | Bundesanstalt für Finanzdienstleistungsaufsicht |
| Greece | Bank of Greece |
| Ireland | Central Bank of Ireland / Banc Ceannais na hÉireann |
| Italy | Banca d'Italia |
| Malta | Malta Financial Services Authority |
| Latvia | Finanšu un kapitāla tirgus komisija / Financial and Capital Market Commission |
| Lithuania | Lietuvos bankas |
| Luxembourg | Commission de Surveillance du Secteur Financier |
| Portugal | Banco de Portugal |
| Slovakia | Národná banka Slovenska |
| Slovenia | Banka Slovenije |
| Spain | Banco de España |
| The Netherlands | De Nederlandsche Bank |