UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ANTONIO DEL VALLE RUIZ AND OTHERS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | <u>**OPINION AND ORDER**</u><br><br>18 Misc. 85 (ER) |
| IN RE APPLICATION OF PACIFIC INVESTMENT MANAGEMENT COMPANY LLC AND ANCHORAGE CAPITAL GROUP, L.L.C. FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | 18 Misc. 127 (ER) |

<u>Ramos, D.J.:</u>

Petitioners in the above-captioned actions have applied for court orders to conduct discovery for use in foreign proceedings, pursuant to Title 28, United States Code, Section 1782. Petitioners in both actions seek discovery against Banco Santander, S.A., Santander Holdings U.S.A., Inc., and Santander Bank N.A (collectively, "Santander"). Petitioners in one of the actions also seek an order to conduct discovery against Santander Investment Securities Inc. For the reasons set forth below, Petitioners' applications are GRANTED in part and DENIED in part.

## I.    BACKGROUND

Banco Popular Español, S.A. was at one point Spain's sixth largest bank, with €147 billion in assets. *See* Decl. of Javier H. Rubinstein in Support of Petition for 28 U.S.C. § 1782 Discovery ¶ 21 ("Rubinstein Decl."), Case No. 18 Misc. 85, Doc. 16.[1] On June 6, 2017, the European Central Bank, which comprises one part of Europe's system of banking supervision, informed the European Single Resolution Board, another part of Europe's system of banking

---

[1] Both sets of Petitioners allege similar (if not identical) facts, most of which are undisputed by Santander. Accordingly, the Court draws from the undisputed facts contained in the Rubenstein Declaration, which is offered in support of the application for discovery in Case No. 18 Misc. 85. All references to the Rubenstein Declaration incorporate the documents cited therein.

supervision, that Banco Popular was failing or likely to fail. *See id.* ¶ 54. On that same day, and at the direction of the Single Resolution Board, Spain's national banking supervisory authority, the Fondo de Reestructuración Ordenada Bancaria ("FROB"), invited several banks to submit offers to acquire Banco Popular. *Id.* Of the banks invited to submit a bid, Banco Santander, S.A. was the only bank to submit one. *Id.* ¶ 56. The next day, June 7, 2017, the Single Resolution Board and FROB accepted Santander's €1 offer and declared Santander the purchaser of Banco Popular. *Id.* ¶ 59. The government-ordered sale of Banco Popular was ostensibly done pursuant to a "resolution," a process in which the aforementioned authorities can force the total or partial disposal of a financial institution's assets when certain requirements are met. *See id.* ¶¶ 46–50. Banco Popular was the first European Union financial institution ever to undergo a "resolution." *Id.* ¶ 5.

Petitioners in the instant actions are former investors in Banco Popular. Petitioners allege that they lost virtually all of their investments when Santander purchased Banco Popular for €1. Petitioners in Case No. 18 Misc. 127—the "PIMCO Petitioners"—manage funds that held Banco Popular bonds. Petitioners in Case No. 18 Misc. 85—the "Del Valle Ruiz Petitioners"— comprise a group of 55 former investors in Banco Popular. Collectively, Petitioners claim to have lost over one billion euros because of the forced sale.

Following Santander's acquisition of Banco Popular, Petitioners initiated actions before the General Court of the Court of Justice of the European Union against the agencies responsible for Banco Popular's resolution. In those actions, Petitioners seek to annul the resolution of Banco Popular, asserting that the resolution was illegal. In addition, Del Valle Ruiz Petitioners initiated investor-state arbitration proceedings against Spain, pursuant to the Mexico-Spain Bilateral Investment Treaty. Del Valle Ruiz Petitioners contend that the Spanish government

"actively participated in the design and decision-making process that ultimately led to the European Commission's and the Single Resolution Board's decision to resolve [Banco Popular]." *Id.* ¶ 2. And PIMCO Petitioners, for their part, filed writs with the Spanish Central Criminal Court to join Spanish criminal proceedings against Banco Popular and its former management personnel. Declaration of Peter Calamari ("Calamari Decl.") ¶¶ 47–48, Case No. 18 Misc. 127, Doc. 8. Neither group of Petitioners have initiated foreign actions against Santander, however.

Pursuant to 28 U.S.C. § 1782, both groups of Petitioners apply for orders from this Court to conduct discovery against Santander for use in the foreign proceedings. PIMCO Petitioners also seek discovery from Santander Investment Securities Inc. Below, the Court analyzes Petitioners' applications.

## II. ANALYSIS

Pursuant to Section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). To obtain a court order for discovery under Section 1782, an applicant must establish the following: "(1) that the person from whom discovery is sought reside[s] (or [can] be found) in the district of the district court to which the application is made, (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and (3) that the application [is] made by a foreign or international tribunal or 'any interested person.'" *In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (citation omitted).

"Once a district court is assured that it has jurisdiction over the petition, it *may* grant discovery under § 1782 *in its discretion*." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d

238, 244 (2d Cir. 2018) (emphases added). "To guide district courts in the decision to grant a

Section 1782 petition, the Supreme Court in *Intel* [*Corp. v. Advanced Micro Devices, Inc.*], 542

U.S. 241 [(2004)], discussed non-exclusive factors . . . to be considered in light of the 'twin

aims' of Section 1782: 'providing efficient means of assistance to participants in international

litigation in our federal courts and encouraging foreign countries by example to provide similar

means of assistance to our courts.'" *Id.* (citation omitted). The four *Intel* factors are as follows:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought form a nonparticipant in the matter arising abroad," given that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence;"

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and

(4) whether the discovery request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264–65; *see also Kiobel*, 895 F.3d at 244 (quoting same).

In this case, Santander purports to challenge the propriety of court-ordered discovery

pursuant to Section 1782 on both statutory and discretionary grounds. At oral argument,

however, Santander effectively conceded that Petitioners, at minimum, have satisfied the second

and third statutory elements of Section 1782. Accordingly, in the analysis below, the Court

addresses the first statutory element only, ultimately finding a lack of authority to grant

Petitioners' applications.

## A. Applicable Legal Standard

To obtain a court order for discovery under Section 1782, an applicant must initially establish that the person from whom discovery is sought resides (or can be found) in the district where the application is made. *In re Edelman*, 295 F.3d at 175–76. Section 1782 does not define what it means to "reside" or be "found" in a particular district, and "[i]t is unclear whether [Section] 1782's statutory prerequisite that a person or entity reside or be found in a district is coextensive with whether a court has personal jurisdiction over that person or entity." *In re Sargeant*, 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017).[2] However, several courts within this District have recognized that, "[a]t minimum . . . compelling an entity to provide discovery under § 1782 must comport with constitutional due process." *Id.*; *accord, e.g.*, *In re Fornaciari*, No. 17 Misc. 521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018); *Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17 Misc. 216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("Whether section 1782's requirement that the person be found or reside in the district equates to a requirement that the court have personal jurisdiction over the person in order to enforce a section 1782 subpoena is unclear. . . . Regardless of what section 1782 requires, the Constitution's due process protections apply."); *cf. Gucci Am., Inc. v. Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court . . . must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." (footnote omitted)).

---

[2] Three requirements must be satisfied before a federal court may lawfully exercise personal jurisdiction: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper," (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective," and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).

Given that constitutional due process principles apply to an applicant's request for discovery, it follows that district courts should employ the same analysis as when determining whether personal jurisdiction is present over a person. Indeed, "Hans Smit, a leading academic commentator and drafter of [Section] 1782, has commented that the language defining [Section 1782's] in personam reach must be given a liberal construction commensurate with the purpose to liberalize the assistance given to foreign and international tribunals," and therefore, "[i]nsofar as the term 'found' applies to legal rather than natural persons, it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." *In re Sargeant*, 278 F. Supp. 3d at 819–20 (some internal quotation marks and alterations omitted) (quoting Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 9–10 (1998)); *accord In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (quoting same). Put differently, a court may issue a discovery order against a person pursuant to Section 1782 only if "the relationship of the person addressed to the district is such as to warrant the exercise of in personam authority under the due process clause." *In re Sargeant*, 278 F. Supp. 3d at 820 (citation omitted); *see also In re Thai-Lao Lignite (Thai.) Co.,* 21 F. Supp. 2d 289, 294 n.4 (D.D.C. 2011) (concluding that the question whether a particular district is one "in which a person resides or is found" and the question whether the district court has personal jurisdiction over the person from whom discovery is sought are two questions that, "[a]t minimum, . . . overlap considerably").

1. ***General Jurisdiction over Santander***

In analyzing personal jurisdiction, the Supreme Court has long distinguished between "specific or case-linked jurisdiction and general or all-purpose jurisdiction."[3] *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017). In *Daimler AG v. Bauman*, however, the Supreme Court cast doubt upon prior decisions in which it upheld the exercise of general personal jurisdiction based merely upon a corporation "doing business" or having a local office within a particular forum, 571 U.S. 117, 138 n.18 (2014), and instead clarified that, with respect to foreign corporations (i.e., "legal" persons), the touchstone of general personal jurisdiction is "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum,'" *id.* at 138–39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court explained that a corporation's place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Id.* at 137 (alterations in original). Moreover, while the Court cautioned that it was not "foreclos[ing] the possibility that in an *exceptional case* . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in the State," *id.* at 139 n.19 (emphasis added), notably, the only example of an "exceptional case" cited by the Court was *Perkins v. Benguet Consolidation Mining Co.*, 342 U.S. 437, 448 (1952). In that case, the Supreme Court found that an Ohio state court could exercise general personal jurisdiction over a Filipino corporation on a claim that neither arose in Ohio nor related to the corporation's activities in Ohio because the corporation was forced to move its operations to Ohio during

---

[3] In general, "all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Gucci Am., Inc. v. Li*, 768 F.3d 134 (2d Cir. 2014) (alterations in original) (citations omitted).

World War II and, consequently, "Ohio was the corporation's *principal*, if temporary, place of business," *Daimler AG*, 571 U.S. at 130 (emphasis added) (citation omitted).

Examples of the strict limits of general personal jurisdiction following *Daimler* abound. In *BNSF Railway*, for instance, the Supreme Court concluded that a railway company's extensive business activities in Montana were insufficient to subject that company to claims in Montana state courts unrelated to the company's business activities in the state. 137 S. Ct. at 1559. Notably, at the time of suit the company "ha[d] over 2,000 miles of railroad track and more than 2,000 employees in Montana." *Id.* Nevertheless, the Supreme Court held that these contacts were insufficient to support general personal jurisdiction, reiterating its remark in *Daimler* that "the general jurisdiction inquiry does not focus solely on the *magnitude* of the defendant's in-state contacts." *Id.* (emphasis added) (quoting *Daimler*, 571 U.S. at 140 n. 20). "Rather, the inquiry calls for an appraisal of a corporation's activities *in their entirety*; a corporation that operates in many places can scarcely be deemed *at home* in all of them." *Id.* (emphasis added) (internal quotation marks and alterations omitted) (quoting *Daimler*, 571 U.S. at 140 n. 20).

Moreover, the Second Circuit held recently that a court within this District erred when it exercised general personal jurisdiction over the Bank of China. *See Gucci Am.*, 768 F.3d at 122. In so holding, the Second Circuit noted that the bank's contacts with the United States— including two bank branches in New York—were insufficient to establish general personal jurisdiction:

> Just like the defendant in *Daimler*, the nonparty Bank here has branch offices in the forum, but is incorporated and headquartered elsewhere. Further, this is clearly not "an exceptional case" where the Bank's contacts are "so continuous and systematic as to render [it] essentially at home in the forum."

*Id.* at 135 (quoting *Daimler*, 571 U.S. at 138 & n.19). The Second Circuit in *Gucci America* acknowledged that its holding stood in sharp contrast with prior Circuit precedent, stating that

"[p]rior to *Daimler*, controlling precedent in this Circuit made it clear that a foreign bank with a branch in New York was properly subject to general personal jurisdiction here." *Id.* at 136.

Courts within this District mostly have followed *Daimler* and *Gucci America*'s reasoning in subsequent Section 1782 cases.  For example, in *Fornaciari*, the court concluded it lacked authority to grant a Section 1782 application against Royal Bank of Canada, noting, "[T]o the extent that [the applicant] premises general jurisdiction on the mere existence of Royal Bank's offices in this District, such argument is foreclosed by *Daimler AG v. Bauman*."  2018 WL 679884, at *2.  In *Sargeant*, the court concluded it lacked authority to enforce a Section 1782 order against a foreign company with one of its so-called "primary business offices" in New York City.  278 F. Supp. 3d at 821.  In so doing, the court noted that "the mere fact that [the company] maintains an office in New York City . . . from which it conducts business does not establish that its principal place of business is its midtown Manhattan location.  Nor is the bare allegation that [the company] conducts business in New York sufficient to establish that its operations in that offices are 'so substantial and of such a nature' as to render [the company] at home in New York." *Id.* (quoting *Gucci Am.*, 768 F.3d at 135–36).

Moreover, another court in this District concluded recently that it lacked authority over a foreign bank because New York was neither the bank's state of incorporation nor the bank's principal place of business, and there were no "exceptional circumstances" that would otherwise support general jurisdiction. *Austl. & N.Z. Banking Grp.*, 2017 WL 3841874, at *3–4 (citing *Gucci Am.*, 768 F.3d at 135, 141); *see also In re Masters*, 315 F. Supp. 3d 269, 277 (D.D.C. 2018) (concluding that neither Bank of America, N.A., nor Citibank, N.A., was "found" in the District of Columbia—notwithstanding that the banks collectively maintained at least eighteen retail branches in the district and offered private banking and brokerage services—because the

banks were not incorporated therein and their respective principal places of business were elsewhere); *cf. Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518 (S.D.N.Y. 2015) (finding general personal jurisdiction improper in discovery dispute against three banks incorporated and principally based elsewhere, and noting that "*Gucci* stands for the proposition that mere operation of a branch office in a forum—and satisfaction of any attendant licensing requirements—is not constitutionally sufficient to establish general jurisdiction").

Given the aforementioned authorities, the Court must rely on *Daimler* and *Gucci* in evaluating the instant case.[4]  Here, Petitioners contend that Santander is "found" in the District because it has a "longstanding and significant presence in this District" and has "made New York a focal point for [their] investors."  Del Valle Ruiz Pet'rs' Mem. at 13–14; *accord* PIMCO Pet'rs' Mem. at 18 ("Santander has a longstanding and significant presence in this district.").  However, even assuming *arguendo* that Santander's business activities in the District are as extensive as Petitioners claim, Santander's activities remain insufficient to satisfy Section 1782.

Petitioners concede that Santander is incorporated and has its principal place of business outside of New York.  Nevertheless, Petitioners argue that Santander is "found" in the District based on the Defendants' level of activities within the District and the State of New York generally.  In total, Petitioners allege the following facts in support of their argument:

- Santander maintains branches in New York City, is supervised by the New York State Department of Financial Services, and manages $14.8 billion in assets here as of 2013;

---

[4] The Court notes one distinguishing fact between the instant case and *Daimler*:  In the latter case, the entity resisting personal jurisdiction was faced with the threat of liability, not just the burden of having to comply with a discovery request, as is the case here.  Prior to *Daimler*, the Second Circuit, in passing, has observed that "a person who is subjected to *liability* by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony."  *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998).  However, in the subsequent decades since that observation, neither the Supreme Court nor the Second Circuit (nor any other Circuit that the Court is aware of) has held that fewer contacts with a forum may be sufficient to exercise personal jurisdiction over an entity who faces the threat of discovery as a nonparty rather than liability as a party-defendant.  Accordingly, the Court will not so find here.

- Santander manages its wholly owned U.S. subsidiaries from New York City;
- Santander constitutes the ninth largest "banking group" by deposit market share in the New York area;
- Santander is listed on the New York Stock Exchange;
- The C.E.O. of Santander recently rang the bell of the New York Stock Exchange to celebrate the 30-year anniversary of Santander's listing on the Exchange;
- Santander executives holds some of their meetings in New York;
- Santander has certified and listed its New York City branch as "Process Agent" in certain filings;
- In previous S.D.N.Y. actions, Santander has admitted that it "maintain[s] offices and conduct[s] business in this district"; and
- One of Santander's chief executives, Scott Powell, lists his location on LinkedIn as New York City and is a board member for at last two New York-based non-profits.

*See* PIMCO Pet'rs' Mem. at 17–23; Del Valle Ruiz Pet'rs' Mem. at 13–16. Nevertheless, in light of the aforementioned authorities, such contacts with this District are not enough. Surely, if 2,061 miles of railroad track and 2,100 employees in Montana were not contacts that were "systematic and continuous" enough to make a railway company essentially "at home" in Montana, *see BNSF Ry.*, 137 S. Ct. at 1554, and the Bank of China's multiple branches in Manhattan were not enough to render it essentially "at home" in this District, *Gucci Am.,* 768 F.3d at 135, then Santander's New York offices, activities, and chief executive's LinkedIn profile are not enough contacts to render Santander essentially "at home" in this District. Nor can it be said that the Santander's contacts with the District are so systematic and continuous that this case is "exceptional" like *Perkins*. Unlike *Perkins*, a case in which the state of Ohio was a Filipino corporation's "*principal*, if temporary, *place of business*," *Daimler AG*, 571 U.S. at 130 (emphasis added) (citation omitted), Petitioners in this case have never suggested that Santander's principal place of business is within the District. At bottom, Santander's contacts with this District are far less systematic and continuous than corporations that have been spared from general personal jurisdiction in other binding authorities.

However, notwithstanding the voluminous case law against their position, Petitioners rely on a few cases that ostensibly support their conclusion that Santander is "found" in this District. None is persuasive. First, Petitioners point to *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016), a case in which the court concluded that a Brazilian multinational mining corporation was "found" in the District because the corporation trades on the New York Stock Exchange, regularly files forms with the Securities and Exchange Commission, and its subsidiary corporation "appears to conduct systematic and regular business in the United States and New York." *Id.* The *Kleimar* court, however, was never asked to grapple with the Supreme Court's view of general personal jurisdiction in light of *Daimler* or *BNSF Railway* or the Second Circuit's opinion in *Gucci America*, and thus never attempted to distinguish the myriad Second Circuit and district court opinions that reached opposite conclusions with similar levels of business activity. *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 641 (2d Cir. 2016) (declining to read Connecticut's business registration and agent-appointment statute as "embodying actual consent by every registered corporation to the state's exercise of general jurisdiction over it" in light of due process and other constitutional concerns); *Motorola Credit Corp.*, 132 F. Supp. 3d at 518 (concluding that foreign banks were not subject to discovery under Section 1782 in this District notwithstanding that the banks maintain branches in New York City and are registered and licensed under New York banking laws and federal laws).

The Court is similarly unpersuaded by Petitioners' reliance on *In re Alghanim*, No. 17 Misc. 406 (PKC), Doc. 7 (S.D.N.Y. Nov. 16, 2017), which Petitioners cite as an example of a court "authoriz[ing] discovery of Santander in another section 1782 proceeding." Del Valle Ruiz Pet'rs' Mem. at 13. However, the record in *Alghanim* makes clear that the court issued the discovery order *ex parte*. Moreover, the record further reveals that Santander *voluntarily* turned

over discovery instead of moving to quash the applicant's subpoena. *See In re Alghanim*, No. 17 Misc. 406 (PKC), 2018 WL 2356660, at \*2 (S.D.N.Y. May 9, 2018). Accordingly, given that Santander neither intervened in that proceeding nor moved to quash the subpoena, the *Alghanim* court had no occasion to determine whether Santander was "found" in the District for purposes of Section 1782. *Cf. Masters*, 315 F. Supp. 3d at 272 ("[D]istrict courts are generally authorized to review a § 1782 application on an *ex parte* basis, and . . . as a general matter, *ex parte* review is justified by the fact that the parties from whom discovery is sought will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.").

Petitioners also cite to *Ayyash v. Crowe Horwath LLP*, in which the court concluded that two foreign accounting firms were "found" in the District because it maintained offices here. No. 17 Misc. 482, 2018 WL 1871087, at \*2 (S.D.N.Y. Apr. 17, 2018). However, like *Kleimar*, the court in *Ayyash* was not asked to analyze jurisdiction in light of *Daimler* and *Gucci America*, and thus concluded that two foreign companies were "found" in the District merely because they have offices here. *Id.* And, like the respondents in *Alghanim*, the *Ayyash* respondents never contested that they were "found" here. *Id.* Consequently, the Court finds Petitioners' reliance on this case unavailing.[5]

---

[5] Petitioners also cite to several out-of-district cases in which courts have found personal jurisdiction over corporate entities proper based solely on the presence of a company's office or business activities in the district. *See, e.g.*, *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016). But all of those cases either predate *Daimler*, *see, e.g.*, *In re Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, 2011 WL 181311, at \*7–8 (S.D. Fla. Jan. 19, 2011), or the courts did not consider whether constitutional due process was satisfied before exercising jurisdiction, *see, e.g.*, *Qualcomm Inc.*, 162 F. Supp. 3d at 1036.

## 2. *Specific Jurisdiction over Santander*

Petitioners, in a final effort, make what can only be described as an argument for the exercise of *specific* personal jurisdiction.  Even without general personal jurisdiction, the Court may obtain specific personal jurisdiction over Santander.  *See Gucci Am.*, 768 F.3d at 136.  As the Second Circuit noted in *Gucci America*, courts undertake a two-step analysis to ascertain specific personal jurisdiction:  "First, the court must decide if the defendant has purposely directed his activities at the forum and the litigation arises out of or relates to those activities."  *Id.* (internal quotation marks and alterations omitted).  "Second, once the court has established these minimum contacts, it determines whether the assertion of personal jurisdiction would comport with fair play and substantial justice."  *Id.* (internal quotation marks and alterations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, Petitioners argue that jurisdiction is proper because some of Santander's activities in the District relate to the subject matter of the discovery they seek.  In support of this argument, Petitioners claim that (1) Santander executives met with analysts and investors in New York City in the days following the "resolution" and subsequent acquisition of Banco Popular to raise capital needed to help facilitate the acquisition; (2) Santander's private counsel wrote letters to the Securities and Exchange Commission to request exemptive relief from certain securities law requirements concomitant with the acquisition of Banco Popular; and (3) Santander allegedly retained investment banks in New York, prior to the sale of Banco Popular, to explore financing options for its acquisition.  *See, e.g.*, Del Valle Ruiz Pet'rs' Mem.  at 15–16; PIMCO Pet'rs' Mem. at 21–23.

The Court finds none of these alleged activities sufficient to exercise specific personal jurisdiction.  With respect to specific jurisdiction over a *nonparty*, as is the case here, generally

courts in this District "first assess the connection between the nonparty's contacts with the forum and the [discovery] order at issue, and then decide whether exercising jurisdiction for the purposes of the order would comport with fair play ad substantial justice." *Gucci Am.*, 768 F.3d at 137. As Santander points out, however, in this case all of Santander's alleged New York activities took place "*after* the Resolution had already been adopted," and thus, the activities "shed[] no light on the regulators' decision to effect the Resolution"—the specific focus of all of Petitioners' foreign proceedings. Santander's Mem. at 14–15. *See, e.g.*, Rubinstein Decl. Exs. 1–2 (applications for litigation against the Single Resolution Board, the European Commission, and Spain involving decisions leading up to and including the Resolution and resultant sale of Banco Popular); Calamari Decl. ¶¶ 43–49 (detailing same). Accordingly, the litigation abroad cannot be said to arise out of or relate to Santander's activities in the forum.

* * * *

The overwhelming majority of courts that have wrestled with the evolving interpretation of Section 1782 have concluded that, at the very least, a corporation is not "found" in a district merely because it maintains offices or conducts business in the district. The Court agrees with this view. The threshold inquiry to establish jurisdiction "is *not* whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are *so continuous and systematic* as to render it essentially *at home* in the forum State." *Daimler*, 571 U.S. at 138–39 (emphases added) (internal quotation marks and alterations omitted); *see also Lockheed Martin Corp.*, 814 F.3d at 629 ("When a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are *extraordinarily unlikely* to add up to an 'exceptional case.'"). Here, Petitioners have failed to establish that Santander

conducts anything other than some level of systematic and continuous business in its offices in the District. This is insufficient to satisfy personal jurisdiction here.

**B. Discovery from Santander Investment Securities Inc.**

PIMCO Petitioners also seek discovery from Santander Investment Securities Inc. (hereinafter, "SIS"). Santander concedes that SIS maintains its principal place of business within the District. *See* PIMCO Pet'rs' Mem. at 5. Consequently, the Court finds that constitutional due process principles and Section 1782's "resides or is found" requirement are satisfied as to SIS. Moreover, at oral argument, Santander conceded, and the Court is independently satisfied, that Petitioners have established Section 1782's other statutory requirements—i.e., that the discovery sought is for use in a proceeding before a foreign tribunal, and that the application for discovery was made by interested persons. *See* 28 U.S.C. § 1782(a). Therefore, the Court concludes that it has statutory authority to grant discovery from SIS.

The Court also finds that discovery against SIS is appropriate. In so finding, the Court has considered the "twin aims" of Section 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Kiobel*, 895 F.3d at 244. The Court is satisfied that, based on the circumstances present in this case and consideration of *Intel*'s discretionary factors, both aims are furthered by this decision.

First, the Court credits Petitioners' arguments that the documents they seek are currently beyond the reach of the foreign tribunals. While Santander has been ordered to produce documents in at least one foreign proceeding, *see* PIMCO Pet'rs' Reply at 7 (noting that the Spanish Central Criminal Court has ordered Santander to produce certain documents), Santander

is not a party in any of the foreign proceedings.[6]  Nor is Santander an especially *active* participant in the criminal proceeding in which it has produced documents.  *See* Santander's July 19, 2018 Letter to the Court, Case No. 18 Misc. 127, Doc. 52 (stating that it has produced only twelve documents related to the Spanish Central Criminal Court's order to produce documents).  This fact generally weighs in favor of granting Petitioners Section 1782 aid.

Second, insofar as Santander argues that this Court cannot compel it to produce documents located abroad, or that producing documents located abroad would be unduly burdensome and intrusive, the Court disagrees.  *See In re Delight Int'l Ltd.*, 16 Misc. 125 (JMF), 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (surveying case law on the question whether Section 1782 authorizes discovery of documents outside the United States and concluding that "the Eleventh Circuit and the district judges who have held that Section 1782 can reach documents abroad have the better of the argument" in light of the plain language of the statute and legislative history).  Accordingly, PIMCO Petitioners' application will be granted as to SIS.

## III.  CONCLUSION

---

[6] The Court notes that Santander has pending motions to intervene in most, if not all, of the foreign proceedings, but they have not yet been granted.

For the reasons stated above, Del Valle Ruiz Petitioners' application for an Order to conduct discovery against Santander for use in foreign proceedings is DENIED.  PIMCO Petitioners' application for an Order to conduct discovery is DENIED insofar as it requests discovery from Santander, and GRANTED insofar as it requests discovery from SIS. The Clerk of Court is respectfully directed to terminate the open motion in Case No. 18 Misc. 85, Doc. 1, and to close that case.  The Clerk of Court is further directed to terminate the open motions in Case No. 18 Misc. 127, Docs. 1, 9.

It is SO ORDERED.

Dated:     October 19, 2018
           New York, New York

Edgardo Ramos, U.S.D.J.